Coös,
June 4, 1929.

JAMES A. FRASER *v.* BERLIN STREET RAILWAY.

PAULINE MASTERSON, *Adm'x, v.* SAME.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the plaintiffs.

*Edmund Sullivan* and *Jesse F. Libby* (by brief and orally), for the defendant.

ALLEN, J. In Gorham village Main street runs westerly towards Berlin. The car track runs close to the north side of the macadamized part of the street. Mechanic street intersects with Main street on its north side. The accident happened after dark at about 7:30 in the evening on a clear night. The plaintiff, driving his sedan westerly on Main street, turned to his right into Mechanic street. The electric car, coming from Berlin, ran into the sedan at the Mechanic street crossing.

The plaintiffs claim negligence in the motorman's failure to ring the gong while approaching the crossing and in the lighting of the car

as insufficient to warn travel it might meet. They also rely on the last chance doctrine. The defendant claims there was no evidence of its negligence and that the accident was wholly due to the plaintiff's fault. No claim is made of any negligence on the intestate's part.

Failure to sound the gong at the crossing tended to show careless operation of the car towards highway travel. Houses near the corner of Mechanic street shut off the view for travel entering Main street, and there was an order and custom for cars to sound the gong before reaching the crossing. The plaintiff knew of the custom, was aware that it was time for a car, and was listening. Under these facts due care towards the plaintiff might require the warning. *Minot* v. *Railroad*, 73 N. H. 317, 321; *Chabott* v. *Railway*, 77 N. H. 133, 137.

The record discloses evidence that the gong was not rung. Aside from the plaintiff's own testimony that he was listening for a car and did not hear the gong, a passenger on the car left it near the Willis house, a distance of about 400 feet from Mechanic street. He testified that after leaving the car and while walking on Main street he heard the crash of the collision and "it came right into my [his] mind" that the collision was due to the failure to ring the gong. This immediate thought upon hearing the crash warranted the inference that he had been listening and noticed that the gong was not rung. It was thus evidence of a positive character, and not of failure to notice when no attention was given. The reliability of the evidence was for the jury's consideration, and it is to be held entitled to belief. It was substantially the same as the evidence considered in *Phillips* v. *Railroad*, 81 N. H. 483, 484, 485, of a witness who while a passenger on a train, although not aware of the train's approach to a crossing, yet had a habit of observing whether crossing signals were given. The rule in situations where the evidence of non-performance of duty is negative or too neutral to be given reliance is therefore not available to sustain the claim of insufficient proof, and the issue of failure to sound the gong was to be submitted.

There was evidence also that the plaintiff would have heard the sound of the gong in plenty of time to stop the sedan before reaching the crossing. While the sedan was noisy like all automobiles of its make, the plaintiff on an occasion in the winter previous with conditions substantially the same as those at the time of the collision had heard the gong of an approaching car, and it is a fair inference without evidence of explanatory differences on the two occasions that if he heard it on one occasion, he would have on the other.

The plaintiff was about 3 rods from the crossing when he began to

make the turn to enter Mechanic street. At his speed of 10 miles an hour it took him 3 seconds to reach the crossing. If the car had a speed of 15 miles an hour, it was then about 4 rods from the crossing, a distance at which it may fairly be said the gong should have been sounded. The case is thus different from *Morier* v. *Hines*, 81 N. H. 48, in which it was held that the plaintiff was not entitled to reliance in failing to hear a locomotive whistle for which he was listening at a point where no whistle was required.

The electric car was equipped with a 110 volt electric headlight contained in a reflector set four or five feet above the ground in the center of the front of the car. The car also carried a searchlight, but under municipal order it was shut off while the car was within the village limits. It was also required to be shut off at the time under P. L., c. 255, s. 7. The headlight lighted the track for about 100 feet ahead and for about 3 feet each outer side of the rails. The curtains of the car vestibule were closed, and the car itself might not be readily and clearly visible to one facing it as it approached until it was near at hand. But while the car was in motion, the headlight gave notice of a moving and approaching object. If from the position of the car on the left side of the roadway the headlight did not make it apparent that it was the headlight of a car, it at least showed that it was either a car or a motor vehicle that was coming towards the plaintiff.

Main street was well lighted. A 250 candle power electric light was placed at the corner of Main and Mechanic streets, another one about 225 feet farther along towards Berlin, a small one about 230 feet still farther along, and another one of 250 candle power about 200 feet beyond the smaller one. The large lights lighted the street so as to show moving objects for a range on the street of about 200 feet and the small one for about 100 feet. These lights were all on the north side of the street and almost directly over the car track. This section of Main street and the track was part of a straight stretch with a practically level grade, and at the time there was nothing to obscure the lights or a view of the track. The night was clear and there were no vehicles between the plaintiff and the car.

The sedan had headlights which it would seem were defective because they did not throw a light visible 200 feet ahead as required by P. L., c. 103, s. 5. How far the lights would extend ahead and spread out did not definitely appear, but the headlights were in good condition and working order.

The plaintiff testified that he began to turn the sedan at the middle

of Main street. The relative speeds and distances from the crossing of the sedan and car would place the car about 100 feet from the sedan when the turn was begun. The light from his headlights must have then reached the car and the headlight of the car was plainly visible where he was. As the sedan swung into Mechanic street its headlights must have shone on the car as it drew towards the crossing. For at least two-thirds of the distance his headlights must have shone directly on the car and for the remaining distance the lateral spread of the lights must have kept it in view. He testified that he knew it was time for a car and was looking as well as listening for one, that he followed his lights all the way after starting to turn, but did not see and was not aware of the presence of the car until the collision occurred.

As to the plaintiff, under the proved facts he gave an impossible account of his conduct and care. It is wholly contrary to reason that the car was not in plain sight during all the time from starting to make the turn. The claim that the street lights may have neutralized the headlight of the car has no support for its acceptance when their locations, the street lights high above, and the moving car headlight within a few feet of, the ground, are considered, together with the proximity to each other of the car and sedan. Moreover, the headlights of the sedan showed the presence of the car regardless of its headlight. And the plaintiff in looking relied on his own lights. He could give no reason for not seeing the car. *Gitomir* v. *Company*, 157 Md. 464.

The plaintiff was not misled into inattention by the failure to sound the gong. He looked as much as he listened. His definite and positive testimony to that effect bars any other theory in support of liability to him. *Harlow* v. *Leclair*, 82 N. H. 506. He testified as to his knowledge and conduct of which he alone could have knowledge, and it would be inconsistent with honesty and good faith for him to recover on a finding of conduct wholly different from that which he claimed in his testimony and which was specially within his knowledge. While there was evidence that he was likely to have no memory of what happened at the time, there was none that if he did have memory about it, it was likely to be distorted as to the essential features of the situation which he would particularly know about. The case is not one where the plaintiff relied only on his faculty of hearing, but he was equally observant in looking. Whether due care required the use of all or only some or none of his faculties of observation has been well established as an issue of fact since the case of *Smith* v.

*Railroad,* 70 N. H. 53. But the question here is of his care after using his faculties which necessarily informed him of the danger.

Looking disclosed the approach of the car in plenty of time to stop the sedan. At its speed it could be stopped in a distance of five feet and in a fraction of a second of time. No evidence is found in the plaintiff's testimony that he had any reason to misjudge or miscalculate in the situation. As the evidence stands, the conclusion is inescapable that he saw the car in ample season to stop his sedan, but he acted as though no car was at hand. This must be conclusively negligence in the entire absence of explanation for his inaction other than inattention to, or disregard of, what he saw. The danger was needlessly encountered. He knew of it and he failed to use ordinary care to avoid it. In the exercise of care a driver necessarily seeing the approaching car if he looked would have stopped or slowed down when no reasonable explanation is given for not doing so. The reasons for giving a train the right of way over a crossing in preference to highway travelers, as declared in *Gahagan* v. *Railroad,* 70 N. H. 441, are sufficient, if not of as much weight, to give a street car like precedence. Its greater weight as compared with an automobile and its inability to turn from its course on the track make it a requirement of due care for the driver of the automobile to let it pass ahead of him when not to do so incurs a danger of their needlessly meeting.

Whether or not the car should have been more brightly lighted is immaterial. It was in sight to one looking as the plaintiff was looking, and its movement towards the crossing was equally noticeable. And since one looking could not help seeing it in its progress, it is likewise immaterial that the gong was not rung. The defendant was required to give reasonable warning, and as it gave warning seasonably in a way that supplied the plaintiff with information of the situation and the danger it presented, it cannot be said that warning in some other way would have led him to take measures of safety. He had sufficient notice of the approach of the car to stop before reaching the crossing, and the violation of his right to receive notice in some other way than by lighting cannot be held an efficient cause of the collision. Notice was given and there is nothing to show from the plaintiff's standpoint that more or other notice would have done any good. It is wholly conjectural to say that the plaintiff's conduct would have been different if the gong had rung, in the light of his claim of his conduct, and as to him, evidence is lacking that the failure to ring helped to bring about the collision. The plaintiff's failure to take any action to avoid the danger he had notice of when his sedan

could be stopped in a fraction of a second and when no evidence tending to show good reason for not stopping it is disclosed, is the only careless cause of the collision, and the defendant's causal negligence towards him cannot be found. *Saunders* v. *Railroad*, 82 N. H. 476, 477, and cases cited; *Collette* v. *Railroad*, 83 N. H., 210, 213.

Nor may the last chance doctrine be invoked. The motorman had no notice that the plaintiff was inattentive to the danger until it was too late to avoid the collision. The plaintiff's turn from Main into Mechanic street at his slow speed gave no notice that he did not intend to stop or slow down as he drew near the crossing so as to let the car pass ahead of him, and there was not time after it appeared that the plaintiff was not going to stop when care on the motorman's part would, and on the plaintiff's would not, avert the disaster. *Johnson* v. *Director-General*, 81 N. H. 289.

The plaintiff's carelessness bars him from recovery. In the action of the administratrix, she is not bound as he is by his testimony. If by the rejection or discredit of his testimony in some part there was evidence of the defendant's causal negligence, she was entitled to the jury's consideration of it. As to her, there may be found the negligent failure to ring the gong, the fact that the plaintiff would have heard it if it had rung, and the fact that he would have thereupon given the attention and care the situation called for. The jury, rejecting his testimony, might say that he did not look or look properly for the car because he did not hear the gong. While he cannot make such a claim since it conflicts with his testimony of special knowledge, the administratrix may. Her case does not rest upon the truth of such testimony. His carelessness is conclusive as to him because no other inference can be drawn from his testimony as to which he could not be honestly mistaken. As to the administratrix, her case stands if there is evidence of liability regardless of his testimony. That danger signals will probably be acted upon by one hearing them and understanding their meaning is a fair inference to draw, and whatever the plaintiff's conduct, it may be found for the administratrix that it would have been such as to avoid the accident if the signal had been given. Her verdict is therefore valid.

*Judgment for the defendant in the Fraser action: judgment on the verdict in the Masterson action.*

MARBLE, J., did not sit: the others concurred.