Hillsborough, }
Dec. 5, 1933. }

FANNIE FEUERSTEIN

*v.*

JOSEPH GRADY, *& a.*

LOUIS FEUERSTEIN *v.* SAME.

*Osgood & Osgood (Mr. Anson G. Osgood* orally), for the plaintiffs.

*Wyman, Starr, Booth & Wadleigh* (*Mr. Booth* orally), for the defendants.

Woodbury, J.   On April 2, 1930, about 7:30 P. M., the plaintiff, accompanied by her nine year old daughter, walked south on the easterly sidewalk of Beech street, in Manchester, to the intersection of that street with Lake avenue.   When she arrived at the curb she looked east and west on Lake avenue and then started to cross to the southeasterly corner of the intersection.   When part way across Lake avenue her attention was attracted by an automobile, headed north on Beech street.   This car had come to rest at a "stop" sign erected on that street at a point on the easterly side thereof, a few feet south of the intersection.   The plaintiff stopped, permitting that car to enter the intersection, and pass in front of her as it turned and proceeded east on Lake avenue.   Almost immediately thereafter she was struck and rendered unconscious by an automobile operated by the defendant, Grady, in which the defendant, Leonard, the owner, was riding.

The defendant's automobile entered Lake avenue one block west of Beech street, turned east on Lake avenue, and proceeded along the southerly side of that avenue to the point of collision.   It was dark at the time of the accident, and the headlights of the defendant's car were lighted, as were those of other cars in the vicinity.

The defendant, Grady, testified that he entered the intersection of Beech street and Lake avenue at a speed "may be a little over fifteen miles an hour," and that his vision of the roadway ahead was somewhat obscured by a blind spot in the light thrown by his own headlights as well as by the beams cast by the headlights of another car approaching him on Lake avenue.   For these reasons he did not see the plaintiff until the front of his car was about twenty-five feet from her.   He further testified that when he first saw her she was standing still, and did not move until the front of his car struck her; that as soon as he saw her he applied his brakes, which were in good condition, but he was not able to stop his car until it had proceeded about half its length beyond the point of collision.   His car was equipped with two-wheel brakes, and the pavement was dry.

Since the defendant was not able to stop his car within the range of his unobstructed vision ahead, there is evidence from which the jury might find him to have been negligent.   This the defendants do not deny, but they urge that the plaintiff's own testimony conclusively shows that she failed to use due care for her own safety, and consequently their motions should have been granted.

The first contention advanced by the defendants in support of their position relates to the plaintiff's conduct just before she stepped off the curb into Lake avenue. She testified repeatedly and without contradiction that at that time she looked to her left and then to her right, that she saw no cars approaching and so proceeded into the traveled part of Lake avenue. It is urged that at that time, the defendant's car must have been in plain view, and that her failure to see it can be explained in no other way than that she did not look carefully. *Fraser* v. *Railroad*, 84 N. H. 107. Assuming that the defendants are correct in contending that she might have seen their car had she looked more carefully, or looked more than "three or four houses" down the street, as she testified, still it does not follow therefrom that she was causally negligent as a matter of law. The defendant was approaching her in the second lane of traffic which she was called upon to cross. It is not necessarily negligent for a pedestrian when crossing a street to postpone careful scrutiny of traffic approaching on his right until the lane occupied by such traffic is reached. Traffic from the left should be carefully considered first. When that lane of traffic is crossed, then traffic from the right should receive primary consideration. One cannot be said to be negligent as a matter of law in giving but cursory attention to traffic approaching on the right while stepping into and crossing the lane occupied by traffic approaching on the left.

The record discloses that the plaintiff, before she stepped off the curb, gave some attention to traffic approaching on her right. That she looked "three or four" houses down the street, when she might have looked further, shows, not that she used no care for her own safety, but that she did not use all the care of which she was capable. Whether the degree of care which she used was as much as the ordinary man of average prudence would have used under the circumstances is peculiarly a question for the jury. That she might have used greater care is not sufficient basis for a nonsuit or directed verdict.

The defendants' second contention relates to the plaintiff's conduct while in the traveled portion of Lake avenue. Her testimony regarding her conduct at that time is confused and conflicting. She was obviously nervous, as she testified she was. She had obvious difficulty in comprehending even the simplest questions asked her on cross, as well as on direct examination, which frequently required counsel to re-phrase their questions several times before they could elicit an intelligent answer. Counsel for the defendants suggested during re-

direct examination that he would not object if she wished to testify through an interpreter. Although her counsel said that "It isn't a question of understanding English," still she must have given the impression that she did not have full understanding either of the questions asked her or of her replies.

While it is true that one interpretation of her testimony leads to the conclusion that she was negligent while in the traveled part of Lake avenue, it is also true that another interpretation negatives that conclusion. Under these circumstances she is entitled to have the judgment of the jury upon which interpretation of her testimony to accept. *Hurlburt* v. *Company*, 76 N. H. 469; *Seaver* v. *Railway*, 78 N. H. 584. *Maltais* v. *Concord*, *ante*, 211, 213. Her testimony is neither "definite and positive," (*Fraser* v. *Railway*, 84 N. H. 107), nor is it "clear beyond question," *Harlow v. Leclair*, 82 N. H. 506), nor "clear and unequivocal," (*Morris* v. *Railroad*, 85 N. H. 265). Without such a basis of clarity and definiteness the rule that a plaintiff may not recover on the basis of testimony in conflict with his own has no application. *LaPolice* v. *Austin*, 85 N. H. 244.

The motions for a nonsuit and for a directed verdict were properly denied.

The defendants seasonably requested the following instruction: "5. It was lawful for Mr. Grady to drive across the intersection of Lake Avenue and Beech Streets at twenty miles per hour." This instruction was given *verbatim*, to which the plaintiff took exception as follows: "The plaintiff excepts to the giving of defendant's request 5."

The statutory regulation in force in this state governing the speed of motor vehicles, Laws 1927, *c.* 76, *s.* 2, does not put any definite mathematical boundary to legal speeds. Drivers are required to operate " . . . at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing . . . ." The statute then goes on to describe six different situations and a *prima facie* legal speed limit is established for each situation. Paragraph IV provides for a *prima facie* legal limit of twenty miles per hour at intersections in a business district where traffic is controlled "by traffic officers or stop-and-go signals."

A charge characterizing any definite speed as legal can only be sustained when the circumstances of the case are such that all reasonable men must agree that such a speed is "reasonable and proper" under the circumstances. In the event of such a situation arising the better

practice would be to tell the jury directly that there is no issue of undue speed for their consideration.

In the instant case the defendant, according to his own testimony, was unable to stop his car within the area of clear vision ahead. From this the jury could find negligent speed regardless of how many miles per hour he was driving. It follows that the jury should have been instructed as to the meaning of the words *prima facie*.

Counsel for the defendants seek to avoid the consequences of the granting of their erroneous request by reason of the failure of plaintiffs' counsel to go into greater detail in specifying the error of which they complain. The rule which requires that counsel state the grounds of their exception to a charge was laid down because: "It would be unjust to allow a party to lie by and take the chances of a verdict in his favor, and, if defeated, avail himself of an exception which might have been obviated if seasonably known." *Haines* v. *Insurance Co.*, 59 N. H. 199. This rule does not require that any particular form of words be used in taking exception to a charge, but it does require that the grounds of the exception be stated in sufficient detail to call the attention of the presiding justice to the error complained of so that he may know the nature of the complaint, and correct his error at once if disposed to do so. *Richard* v. *Company*, 79 N. H. 380.

The error here complained of, not being a slip of the tongue or inadvertence in speech, but being an erroneous statement of statutory law, an exception which directs the court's attention to the actual sentence in which the error of law is contained is a sufficiently definite specification of the error complained of. An exception which specifies the number of the request complained of is a sufficient exception to save the rights of the excepting party.

The case at bar was tried on the theory that Lake avenue was a legally designated "through street" at the time of the accident; that the "stop" signs on Beech street were legally erected there; and that such an intersection was one protected by a "stop-and-go signal" within the meaning of Laws 1927, c. 76, s. 2, *par*. IV above referred to. After verdict the parties agreed to a stipulation, the obvious tendency of which was to cast some doubt upon the legality of the designation of Lake avenue as a "through street." It was the duty of counsel relying upon Lake avenue as a "through street" to produce evidence to that effect at the trial. The stipulation comes too late to be availed of here.

An intersection protected merely by "stop" signs, is not within paragraph IV of *s*. 2, of *c*. 76, Laws of 1927. A signal informing

traffic when to move as well as when to stop provides definitely more protection than a device merely calling upon traffic to stop, leaving it to the discretion of the driver when to proceed.  It can not be considered that the legislature intended to provide the same limitation as to speed for intersections protected merely with a device halting traffic, as it provided for intersections with a device giving full control of traffic.

*New trial.*

All concurred.