Strafford,
Sept. 21, 1934.

JOHN R. EMERSON

*v.*

THE TWIN STATE GAS & ELECTRIC COMPANY.

*Conrad E. Snow* and *Leonard C. Hardwick* (*Mr. Snow* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Burns* orally), for the defendant.

PEASLEE, C. J. I. Underlying the other issues in this case is the problem of the relation of the defendant and the city to each other and to the traveling public. The defendant owns gas mains, buried under the streets and used in the business of serving the public in the distribution and sale of gas. It is necessary to dig up the streets from time to time to make repairs upon the mains.

The statute provides that permission for the original location of the mains must be obtained from the city. P. L., c. 98, s. 1. It is conceded that such permission was obtained and that the mains were legally located. There is a further provision that when there is occasion to dig up the streets in order to make repairs like permission must be obtained. *Ib.*

The statute designates the mayor and aldermen as the officials to grant such permission; but an amendment to the charter of Dover transferred the management and control of the streets in that city to the street commissioner. Laws 1929, c. 329, s. 35. The defendant applied for and received oral permission to make the excavation in question. This was sufficient to relieve the defendant from the

character of an interloper, and its acts in digging up the street from constituting a nuisance. However desirable it may be that such permits be made matters of record, the statute does not require it. The acts were done with the statutory consent, and the excavation was not a nuisance *per se*.

The obligations of one exercising a privilege so granted are defined in the statute.

"2. Restoring Highway. Every person and every corporation who shall dig up any highway or public ground for such purpose shall restore the highway or ground to as good condition as it was in before so doing, without unnecessary delay, and shall take all necessary precautions to protect the public from injury by their acts.

"3. Damages. They shall be liable for all damages occasioned to the town or city, or to any person, by any act so done or by any negligence connected therewith." P. L., c. 98, ss. 2, 3.

Conceding that there was evidence that the hole was improperly refilled, the defendant denies responsibility for the results which followed. After the city charter was revised in 1929, the city government passed an ordinance which provides that "it shall be a consideration of all such licenses . . . that the back filling and repairs incident to the granting of any such license, shall be done and performed by said street commissioner, and any and all expense incurred by said street commissioner, in the performance of such work shall be paid by said licensee."

It is argued that this ordinance took from the defendant all control over the refill, and that therefore liability for its condition does not exist. The city could not, by ordinance, vary the liability which the statute imposes upon the defendant. By whatever agency the refilling is done, the statutory responsibility therefor remains upon the defendant.

It is true that the imposition of such a condition for granting the license may entail great hardship upon the defendant. On the one hand it is liable to the traveling public for injuries caused by improper refilling, and on the other control over that operation is taken from the defendant by the city. It may be that the ordinance is void as attempting to impose unreasonable restrictions upon the exercise of rights vested in the defendant by charter or earlier compact with the city. The origin and nature of the right to maintain the mains does not appear. But whatever it may be, it does not in any way impair the statutory protection given to the traveling public. If the ordinance attempts to unduly limit the defendant's operations, the

remedy is to be sought in resistance to the ordinance, and not in a denial of the rights of the public.

Moreover it appears that in this instance the provisions of the ordinance were not insisted upon. It could be found that the refilling was done by the defendant, without any supervision by the city. Clearly, any negligence in that operation was chargeable to the defendant, and liability for untoward results would follow.

It is next urged that, as the defendant filled the hole so that a surface even with the street was attained, and the result was approved and accepted by the city, the defendant's obligations were at an end and its liability for future results terminated.

The city's acceptance of the condition could not impair the statutory rights of the public. It is not a judgment that the work was properly done.

Nor would the city's neglect of an alleged duty to properly care for the situation after taking it over relieve the defendant from results thereafter occurring because of improper filling by the defendant, not remedied by the city. Such negligence of the city would not be an intervening cause within the meaning of the law of negligence. *Robertson* v. *Monroe*, 79 N. H. 336. The defendant's negligence "was not deprived of its character as legal cause by the mere failure of a third person to counteract its tendencies." *Bixby* v. *Thurber*, 80 N. H. 411, 415.

There was sufficient evidence that the settling of the fill, and the consequent need of frequent additions thereto, were the direct result of the use of improper material and method by the defendant. According to this evidence, the situation which developed was one to be expected, and one which could have been wholly avoided if the original fill had been proper as to both material and method. The plaintiff was entitled to go to the jury upon the broad issue that the statutory duty to restore the highway to as good a condition as it was in before had not been performed.

II. The claim that contributory negligence was conclusively shown requires but brief consideration. If the plaintiff failed to observe the hole it may have been because the color of the fill closely resembled that of the road surface. The inconspicuous nature of the defect was further evidenced by adverse happenings to other travelers at the same point on the day of the accident.

The speed law does not set an absolute limitation. "The statutory regulation in force in this state governing the speed of motor vehicles, Laws 1927, *c*. 76, *s*. 2, does not put any definite mathematical

boundary to legal speed." *Feuerstein* v. *Grady*, 86 N. H. 406. There was evidence from which it could be found that the plaintiff's speed was reasonable and proper.

The motions for nonsuit and directed verdict were properly denied.

III. The plaintiff's skull was fractured by the accident. Upon the issue of future results from this injury evidence was admitted as follows: "Q. And assuming that he does now still complain of them, what is to be expected, or what are the possibilities with reference to the continuance of headaches? A. Why, it is very possible that he may continue to have headaches. Q. For how long? A. That is hard to say; may continue indefinitely; may clear up. *Mr. Hughes:* What was the last please? *Witness:* May clear up. Q. Will you state, Doctor, whether or not it is possible after a concussion of the brain and break in the skull, as here, to say certainly what the outcome will be? A. No, sir. Q. What are some of the possibilities? *Mr. Hughes:* Well, is that what we are trying it on, if the Court please? *Court:* Usually on the probabilities. *Mr. Snow:* Well, if Your Honor please, we have only one time to recover for any possible damages, of course. *Court:* Confine yourself to probabilities rather than possibilities. Q. What are the probabilities, or what are among the probabilities? A. Well, he has a headache now; that may continue and it may not. You can say more about the possibilities than you can the probabilities. Skull fractures are serious. *Mr. Hughes:* Isn't this speculative entirely when we get into that field? *Court:* Well, it is more or less so, but it is admitted. Q. Go ahead. A. There are latent results from fractures; sometimes mental disturbances later on; you can't tell when it may come; dizziness known to follow, epilepsy, sometimes loss of some of the special sense organs like smell, hearing, memory, and so forth. *Mr. Hughes:* This is all subject to our exception, if the Court please. *Court:* Yes. Q. Is it possible to say certainly in this case whether or not any of these will follow? A. No. sir. *Mr. Hughes:* We ask it be stricken out, if the Court please. *Court:* It may stand. *Mr. Hughes:* Exception."

If this was testimony as to probable results it was properly received. If it related to mere possibilities, or to things not more probable than otherwise, it would afford no basis for an assessment of damages. *L'Esperance* v. *Sherburne*, 85 N. H. 103. Unless sufficient, either alone or coupled with other evidence, to afford a basis for a finding of a balance of probabilities, the motion to strike it from the record should have been granted. There is no claim of corroborative evidence, and standing alone it does not measure up to the required standard.

It is argued that, since the question asked, objected to and ruled upon was proper, the defendant has no ground for complaint. That would be true if nothing further was done about it. But after the inadmissible answer had been given to the proper question the defendant pursued its objection by a motion to strike out, and excepted to a denial of the motion. This presented the legal issue of the propriety of the answer, as distinguished from that of the question. *Wheeler* v. *Company*, 77 N. H. 551.

The further claim that the motion to strike out was too general (citing *Gregoire* v. *Allard*, 84 N. H. 473), is not well founded. Practically all that was received in evidence after controversy over this topic of future suffering arose related to possibilities. None of it, fairly construed, tended to show anything to be expected as more probable than otherwise.

The evidence remained in the case: and, subject to exception, the plaintiff was permitted to argue it to the jury as a ground for the assessment of damages. For these errors the verdict must be set aside. Whether the new trial shall be of the whole case, or of the issue of damages only, is for the superior court to determine. *West* v. *Railroad*, 81 N. H. 522.

The other exceptions are disposed of by what has been said upon the issue of liability, or are of such a nature that the questions are not likely to arise at another trial.

*New trial.*

BRANCH, J., was absent: the others concurred.