Hillsborough
No. 91-031

KATINA TZIMAS

v.

COIFFURES BY MICHAEL & a.

May 1, 1992

*Nixon, Hall and Hess P.A.*, of Manchester (*Francis G. Murphy, Jr.*, on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch P.A.*, of Manchester (*Andrew D. Johnstone* on the brief and orally), for the defendants.

BROCK, C.J.   The plaintiff, Katina Tzimas, appeals an adverse decision by the Superior Court (*Goode,* J.) on her workers' compensation claim against the defendants, Coiffures By Michael and the Hartford Insurance Company, pursuant to RSA chapter 281-A (Supp. 1991). We affirm.

The plaintiff was employed by Coiffures By Michael as a hairdresser from November 1987 until her injury on January 11, 1989. The plaintiff's work as a hairdresser frequently required prolonged periods of standing behind or next to a customer with her hands raised, as well as various cleaning tasks. In mid-December 1988, Tzimas began to experience a tightness or stiffness in her neck. She neither sought medical attention nor stopped working as a result of her pain. Then, on January 11, 1989, the pain worsened. Although in obvious pain, she worked her regular shift, but later that night the pain became so severe that her husband took her to Elliot Hospital emergency room.

Following her visit to the emergency room, Tzimas saw her family doctor, Stephen Tzianabos, M.D., who in turn referred her to a physiatrist, Irina Barkan, M.D. Dr. Barkan performed a comprehensive neurological evaluation, made a preliminary diagnosis, and suggested that the plaintiff have other diagnostic tests performed. The plaintiff was subsequently seen by several other specialists, and ultimately had surgery to remove a herniated disc.

On January 31, 1989, the plaintiff filed a workers' compensation claim with the department of labor, claiming that her neck injury was caused by her work as a hairdresser. The department denied her claim and she filed an appeal with the superior court. After a trial *de novo*, the court concluded that the plaintiff had failed to prove that her injury was causally related to her work. Following the court's denial of her motion to reconsider, the plaintiff appealed to this court.

In the absence of any evidence of a traumatic event, both the plaintiff's and the defendants' experts agreed that the injury to her neck was the result of a degeneration of the cervical disc combined with a minor incident that caused the herniation of the disc. The defendants concede that if the degeneration occurred as a result of her work, regardless of where the actual precipitating event took place, she would be covered by workers' compensation. Further, the plaintiff does not contend that a traumatic event occurred at work; therefore, the issue is whether the degeneration was caused by her work.

■■ In a workers' compensation case, the claimant bears the burden of proof on the issue of causation. *Town of Hudson v. Wynott*, 128 N.H. 478, 483, 522 A.2d 974, 977 (1986). "The claimant must . . . prove legal causation, that is, that [her] injury is work-connected, and medical causation, that is, that [her] disability was actually caused by the work-related event." *Town of Goffstown v. Morgrage*, 122 N.H. 591, 593, 448 A.2d 385, 386 (1982).

At her trial before the superior court, the plaintiff offered Dr. Barkan's deposition testimony to prove the causal connection between the degeneration of her C6–C7 disc and her occupation. Dr. Barkan opined that "working with the repetitive arm motion is a high-risk profession for the neck," but she could not definitively determine the cause of the plaintiff's disc degeneration. In fact, when specifically asked whether the repetitive nature of the plaintiff's work caused a cumulative type trauma to the cervical disc, she replied: "I'm not saying [the plaintiff's work as a hairdresser] caused it; I'm saying it's quite probable because this type of work may cause a cumulative trauma to cervical disks and may gradually degenerate . . . ." Later still, the following colloquy ensued between the defendants' attorney and the witness:

"Q. . . . So, your opinion that her occupation as a hairdresser probably—

A. Could have caused it; it's based on the lack of notation of trauma, mainly on the lack of notation of trauma.

Q. But it's based on your understanding of what a hairdresser generally does?

A. Exactly.

Q. As opposed to what Katina did?

A. No, I don't know what she did. I didn't ask her how many hours she worked, how extensive; and so what I'm saying, because the woman is relatively young, she didn't have any trauma, she didn't do anything, construction work or lifting or anything that I would suspect as a very strong reason for adverse trauma, and she worked in a profession that in my practice I see as a risky profession because of repetitive abuse of the cervical muscles, I say it's—probably this profession had caused early degeneration of the cervical disk and eventually led to its herniation. It's possible."

Further, the defendants introduced expert testimony by Donald Cusson, M.D., an orthopedic surgeon. Dr. Cusson firmly disagreed

with Dr. Barkan's opinion that the disc degeneration exhibited by the plaintiff could have been caused by her work as a hairdresser.

■ "[A] trier of fact is free to accept or reject an expert's testimony, in whole or in part, when faced with conflicting expert testimony." *Bartlett Tree Experts Co. v. Johnson*, 129 N.H. 703, 706, 532 A.2d 1373, 1374 (1987); *see also State v. Chase*, 135 N.H. 209, 215, 600 A.2d 931, 935 (1991) ("We will not overturn the credibility ruling of the factfinder, who is in the best position to make such a determination . . . ."). The factfinder expressly found the defendants' expert credible. In so finding, the judge was unable to determine the cause of the degeneration, and, thus, concluded that the plaintiff had failed to meet her burden of proof.

The plaintiff claims that the judge erred in so ruling because "the defendant produced no medical expert who opined that her injury was probably caused by a specific non-work trauma." In other words, according to the plaintiff, once she produced evidence that the injury probably resulted from her work, the burden of proof then shifted to the defendants to prove that it was caused by some non-work related action. The plaintiff, however, confuses the burden of persuasion with the burden of production.

■ "It is well established that while the ultimate burden of proof never shifts, the burden of going forward may do so." *Blethen v. Lawrence*, 116 N.H. 840, 841, 376 A.2d 884, 884 (1976). In order to prove causation, the plaintiff must produce evidence to prove it is more likely than not that her injury was work-related. *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 230, 400 A.2d 1163, 1168 (1979). Assuming that she did this with Dr. Barkan's testimony, the burden of *production* then shifted to the defendants to show that the injury probably did not occur at work. The burden of persuasion did not shift to the defendants; thus, at no time were the defendants ever required to prove where or how the injury occurred.

■ In this case, the defendants rebutted the plaintiff's *prima facie* case with Dr. Cusson's testimony; the evidence was equivocal and the factfinder was unable to determine what caused the plaintiff's injury. Because it was reasonable for the factfinder to be unable to conclude that the injury resulted from her work, the plaintiff has failed to meet her burden of proof. Therefore, the trial court was correct in denying workers' compensation benefits to the plaintiff.

*Affirmed.*

All concurred.