Compensation Appeals Board
No. 92-362

APPEAL OF CARL D. STETSON
(New Hampshire Department of Labor
Compensation Appeals Board)

March 18, 1994

*William P. Briggs, P.A.*, of Kittery, Maine (*William P. Briggs* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Richard E. Galway* and *Julie Ann Boyle* on the brief, and *Mr. Galway* orally), for Berlin City Ford.

THAYER, J. The petitioner, Carl D. Stetson, appeals the decision of the New Hampshire Department of Labor Compensation Appeals Board (board) denying workers' compensation benefits based upon its determination that Stetson's claimed injury, a 100 percent occlusion of his left anterior descending artery, was not the result of stress generated by his employment. We affirm.

The petitioner suffered severe chest pains, sweating, and fainting on May 7, 1990, while employed by Berlin City Ford. He was taken from the dealership to the Androscoggin Valley Hospital where he was admitted as a cardiac patient. Testing performed at the hospital during his seventy-two hour stay revealed no clear abnormalities, and he was diagnosed as having angina. After being discharged from the hospital, the petitioner was referred to Dr. Emil Pollak of Mary Hitchcock Hospital. Two months later, because the petitioner did not respond to treatment for angina, a cardiac catheterization was performed, which revealed a 100 percent occlusion of the left anterior descending artery, a seventy-five percent occlusion of the circum-

flexed coronary artery, and a lesser occlusion in the right coronary artery.

Dr. Pollak, the petitioner's expert, opined that it was medically probable that the total occlusion of the left descending artery occurred on May 7, 1990, as a result of the stress that the petitioner experienced at work on that day. Based upon his belief that total occlusion could not occur absent severe pain unless there existed a collateral blood supply to the heart, Dr. Pollak opined that the occlusion most likely occurred on or about the time that the petitioner experienced severe chest pains at work. The employer's expert, Dr. Elliot L. Sagall, disagreed with Dr. Pollak's analysis. Based upon a review of the petitioner's medical records, he testified that while the occlusion possibly occurred on May 7, 1990, there were various equally possible explanations for the angina symptoms. He stated that he could not say with reasonable medical certainty or probability that the 100 percent occlusion occurred on May 7, 1990, or that it occurred as a result of stress from the petitioner's job. He opined that the occlusion which petitioner claims as his injury might just as probably have occurred before or after May 7 as on that day.

The board accepted Dr. Sagall's opinion, and found that "it is equally plausible that the 100% occlusion developed before May 7 as after." In so doing, the board considered Dr. Pollak's testimony that collateral sources of blood feeding the petitioner's left descending artery could have rendered the condition asymptomatic, and could account for the lack of damage to the heart tissue in spite of the blockage. The board also accepted Dr. Sagall's explanation that a total occlusion could exist without pain to the petitioner. The board therefore held that the petitioner had failed to present sufficient evidence to establish his claim that the stress at work on May 7, 1990, triggered physiological changes resulting in the total occlusion of the artery on that date.

We do not overturn agency decisions or orders, absent an error of law, "unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (1974); *Appeal of Nolan*, 134 N.H. 723, 727–28, 599 A.2d 112, 115 (1991).

To obtain workers' compensation benefits for a heart-related disability, the plaintiff must prove both legal and medical causation. *Cheshire Toyota/Volvo, Inc. v. O'Sullivan*, 129 N.H. 698, 700–01, 531 A.2d 714, 715 (1987); *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 230, 400 A.2d 1163, 1168 (1979). In order to show legal

causation where, as here, the petitioner suffered from preexisting coronary artery disease, the petitioner must show that his employment "contribute[d] something substantial" to the heart-related condition by demonstrating that the work-related stress was greater than that encountered in his non-employment life. *Steinberg,* 119 N.H. at 231, 400 A.2d at 1168. The board found that the petitioner's job was extremely stressful on a regular basis, and that on May 7, 1990, the petitioner experienced a "very demanding morning." While the board does not so state explicitly, from its factual finding of the stressful work environment, it apparently concluded that the petitioner had met the test for legal causation.

■ As for medical causation, the petitioner bears the burden of proving, by a preponderance of the evidence, that his work-related stress caused or contributed to the occlusion as a matter of medical fact. *See Bartlett Tree Experts Co. v. Johnson,* 129 N.H. 703, 709, 532 A.2d 1373, 1376 (1987). The petitioner contends that the board misapplied this standard, arguing that "[t]he fact that Mr. Stetson's collapse followed prolonged worsening employment-related stress as well as immediate and acute physical exertion from pounding vigorously on a counter meets the medical causation element of *Steinberg,* that the work-related 'stress . . . probably caused or contributed' to his injury." The petitioner here confuses the standards for legal and medical causation. While the showing of a stressful work environment in this case may have met the standard for legal causation, it is insufficient to show medical causation. The relationship between the stress and the physiological changes must be shown as a medical fact, *see id.,* which connection the petitioner tried unsuccessfully to prove through his expert's testimony.

■ The petitioner further argues that the board's determination was "against the weight of the medi[c]al evidence presented by both sides at the time of the hearing." The petitioner misconstrues the standard of review of agency determinations. Our task is not to determine whether we would have found differently than did the board, *Averill v. Dreher-Holloway,* 134 N.H. 469, 472, 593 A.2d 1149, 1151 (1991), or to reweigh the evidence, *O'Sullivan,* 129 N.H. at 702, 531 A.2d at 716, but rather to determine whether the findings are supported by competent evidence in the record, *Appeal of Lambrou,* 136 N.H. 18, 20, 609 A.2d 754, 755 (1992).

■ In this case, there is ample evidence in the record to support the board's determination that the petitioner failed to meet this burden. The medical tests performed immediately after the petitioner's

collapse showed neither an occlusion nor damage to the heart wall, and the petitioner was diagnosed as having experienced an attack of angina, or pain caused by a lack of blood flow to the heart. Moreover, as noted above, the employer's expert disagreed with the petitioner's expert that a link could be made between the work-related stress and the onset of the occlusion with reasonable medical probability with regard to either the timing or the causation of the occlusion.

■ The petitioner also argues that the board erroneously accepted the testimony of Dr. Sagall because it was based on possibilities rather than probabilities, and because Dr. Sagall failed to specify which alternate theory was most likely the explanation in this case. In so arguing, the petitioner forgets that he bears the burden of persuasion to prove it is more likely than not that his injury was work-related. *Tzimas v. Coiffures by Michael*, 135 N.H. 498, 501, 606 A.2d 1082, 1084 (1992). Once the petitioner meets his initial burden to establish a *prima facie* case, the burden of production shifts to require the defendant to rebut the claims made. *Id.* The burden of persuasion never shifts, however, and therefore the defendant need not prove where or how the injury claimed actually occurred. *Id.*; *Johnson*, 129 N.H. at 706–07, 532 A.2d at 1374–75. In this case we need not rest our decision only on this ground, because the petitioner's argument mischaracterizes Dr. Sagall's testimony. While Dr. Sagall did testify to a variety of possible causes for occlusions in the abstract, he also closely reviewed the facts of this case. He based his opinion upon the following: a review of the hospital test results showing that no heart attack had occurred; the change in the petitioner's stress test results from negative to positive over a period of several weeks, which could indicate that the occlusion occurred at a later time than the original angina attack; and the petitioner's medical history, which included a hiatal hernia that Dr. Sagall testified was indistinguishable symptomatically from angina. He agreed with Dr. Pollak that the petitioner's collateral sources of blood could have rendered the condition asymptomatic, and stated that the occlusion could therefore have also pre-dated the anginal attack experienced at work. Dr. Sagall testified, based upon these various possibilities, that he could not determine with any degree of reasonable medical probability that anything other than an angina attack had occurred at the time of the petitioner's collapse, nor could he determine with any reasonable medical certainty or probability when the occlusion occurred, or indeed whether the total occlusion as opposed to the partial occlusion of several other arteries caused the anginal pain

that the petitioner experienced on May 7, 1990. The board accepted this opinion.

 The petitioner lastly argues that the board erred by elevating the petitioner's burden of proof. He contends that the board should not have required him to show a specific causal relationship between the work and the occlusion, but rather should have allowed him merely to prove that a disabling incident occurred which produced the incapacity. The board's need to determine the relationship between the occlusion and the work-related stress, however, stemmed from the petitioner's own theory of the case. The petitioner chose to premise his case before the board on the theory that the total occlusion of his left anterior descending artery was causally linked to the work-related stresses of May 7, 1990, when the petitioner collapsed at Berlin City Ford. The only evidence in the record of a causal relationship between the petitioner's employment and his claimed injury, the total occlusion, was his expert's opinion that the stressful events of that particular day probably caused the occlusion to occur on or around the time the pain first occurred at work. The petitioner himself thereby set the timing and claim parameters of this case.

*Affirmed.*

All concurred.