Compensation Appeals Board
No. 92-664

APPEAL OF GEORGE GAMAS

(New Hampshire Department of Labor
Compensation Appeals Board)

May 19, 1994

*Yakovakis, McDonough & Lindh, P.A.*, of Manchester (*James S. Yakovakis* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Richard E. Galway* and *Julie Ann Boyle* on the brief, and *Mr. Galway* orally), for Anheuser-Busch.

BATCHELDER, J.   The petitioner, George Gamas, appeals the decision of the New Hampshire Department of Labor Compensation

Appeals Board (board) denying workers' compensation benefits based upon its determination that the petitioner failed to prove that he was totally disabled. We affirm.

The petitioner was employed as a laborer by Anheuser-Busch in 1980 when he injured his lower back due to heavy lifting in the course of his employment. He was diagnosed as having a strain of the lumbar spine and a herniated lumbar disc. He developed debilitating psychological problems during the following year. According to Dr. Larry Politz, the psychiatrist who examined him at that time, the petitioner suffered from major depressive disorders secondary to his physical condition, combined with psychotic symptoms. In 1981, the petitioner was found by the Social Security Administration to be totally disabled.

The petitioner continued treatment with Dr. Donald Cusson, his orthopedic physician, and began psychiatric treatment with Dr. Politz in 1983. Against the advice of Dr. Cusson, the petitioner returned to work at Anheuser-Busch in 1985 and reinjured his back several months later. He received temporary total disability benefits until August 27, 1991, when a hearing officer for the department of labor found he was no longer totally disabled from employment. The petitioner appealed this decision to the board, which held a hearing on June 5, 1992.

At the hearing before the board, the petitioner submitted documentary evidence from four orthopedic surgeons who had examined him and provided opinions that he remained totally disabled. One of these surgeons, Dr. William Kilgus, testified at the hearing that, in his opinion, the petitioner continues to suffer from a herniated disc, causing pressure on the nerve roots to the lower legs rendering the petitioner "unable to return to any type of work." Dr. Kilgus' written report, based on a 1991 examination, describes "a poor range of motion of the [petitioner's lumbosacral] spine with significant pain and spasm on motion." On cross-examination, Dr. Kilgus acknowledged that the petitioner has no atrophy in his legs, and that he would expect to see atrophy in an individual with the petitioner's complaints because of disuse and nerve impairment. He also testified that surgery was not indicated because of minor "objective findings" and "symptom magnification" by the petitioner.

Also submitted on the petitioner's behalf were reports from three psychiatrists attesting to the petitioner's seriously disabling mental depression resulting from his injury. His treating psychiatrist, Dr. Politz, testified that the petitioner still suffers from a major depressive disorder "with paranoid or psychotic features." Dr. Politz de-

scribed the petitioner as irrational, angry, paranoid, and totally pre-occupied with his condition, *i.e.*, "his pain and the whole disability process and his employer." His treatment with Dr. Politz consists of drug maintenance on the mood-stabilizer Klonopin and monthly supportive psychotherapy sessions. In Dr. Politz's opinion, the petitioner's poor concentration, depression, judgment and emotional controls make it impossible "at this point in time and in the near future for him to be functioning in a work capacity." At no time has Dr. Politz found the petitioner to be a "work malingerer."

The employer's orthopedic expert, Dr. Mordecai E. Berkowitz, disagreed with the petitioner's experts, based on his review of the medical records and his own examination of the petitioner. He noted that the petitioner's 1986 CT scan examination yielded a diagnosis of only "suspicious" for disc herniation, and that there was no observable atrophy of the legs. The leg muscles were better developed than he would have expected from someone in chronic pain for ten years, and the petitioner "had good muscle bulk." On the whole Dr. Berkowitz opined that the petitioner's complaints were not explainable "orthopedically and biologically," and that while he made "some findings, there was not enough to warrant from [his] point of view . . . ongoing total disability . . . ." Dr. Berkowitz concluded that the petitioner was capable of resuming work "in a light duty to sedentary type work capacity in which he could lift five pounds frequently and 10 pounds on occasion to get him back into the work force . . . ."

The employer's psychiatric expert, Dr. Robert Weiner, twice examined the petitioner and reviewed a portion of the petitioner's records. In his opinion, the petitioner is manipulative and exaggerates his impairments, and receives from Dr. Politz a supportive forum for "ventilat[ing] his anger, frustration, desire for vengeance, [and] his profanity . . . ." According to Dr. Weiner, "[f]rom a psychiatric point of view, in terms of mental health, it would be in his best interest to go back to work and to be active. He does not have a mental illness that would prevent him from working."

The board, by a two-to-one vote, found that the petitioner failed to meet his burden of establishing that he continued to be totally disabled. The majority, the two lay members of the board, found that the petitioner's objective symptoms of physical disability appeared to be minor, as shown by Dr. Kilgus' testimony that surgery was not indicated and by the absence of leg atrophy and the presence of good muscle tone to the legs. The majority further noted that despite the petitioner's claim of experiencing a different amount of pain in each leg, there was no accompanying disparity in muscle bulk or tone.

With respect to the petitioner's psychological condition, the majority found that his complaints were "exaggerated and not credible," and that he was "successfully manipulating" Dr. Politz, who saw him only monthly "in a largely 'supportive' role." The majority concluded that the petitioner's relationship with Dr. Politz "was simply maintaining [him] at a plateau of tolerance or reinforcement of his sedentary life style characterized by noninvolvement with family and friends."

The dissenting board member, the attorney member, wrote separately to express his opinion that "[t]he combination of the depressive disorder and persistent lower back impairment render claimant unable to engage in gainful work at this time." In support of this conclusion, the dissent pointed to evidence that at the time of his injury the petitioner suffered an "'amputation of the nerve root at [the L4-5 disc],'" that leg-raising tests administered by two surgeons "showed positive findings," that the petitioner unsuccessfully attempted to return to work in 1985, and that his pre-injury mental health was normal. The dissent also noted that, of the orthopedic surgeons rendering opinions on the subject, all three who had actually treated the petitioner found him totally disabled as a result of his back injury.

The petitioner moved to reconsider the board's decision, and, again by a two-to-one vote, the board denied the motion. This appeal followed.

The petitioner essentially argues on appeal that the overwhelming weight of the evidence presented to the board established, by a preponderance, that he was totally disabled from employment. He argues in addition that the decision of the board reflects a failure of the board members, as lay people, to appreciate and apply the correct standard of proof.

■ We will not overturn the board's decision unless the petitioner has shown it to be "clearly unreasonable or unlawful . . . ." RSA 541:13 (1974). "Our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Appeal of Stetson*, 138 N.H. 293, 296, 639 A.2d 245, 248 (1994) (citations omitted).

■■ The record contains competent evidence which supports the findings that were the basis of the board's decision. Undeniably, the petitioner presented quantitatively more evidence to prove his disability than did the employer to disprove it. The burden of proof, however, is not satisfied by mere numbers. When faced with conflict-

ing expert testimony, as here, factfinders are free to disregard or accept, in whole or in part, that testimony. *See Tzimas v. Coiffures by Michael*, 135 N.H. 498, 501, 606 A.2d 1082, 1083 (1992). This is especially so when the expert opinion, as in this case, derives at least in part from narrative from the patient-petitioner himself, whose credibility is thereby the subject of inquiry. In this case, evidence supports the board's conclusion that the petitioner's severe psychiatric symptoms were not credible. Dr. Weiner testified, for instance, that despite the petitioner's complaint of inability to think or remember things, the petitioner was able to recite specific details of his case against his employer and demonstrated no impairment of memory or thoughts during his interview with Dr. Weiner. In addition, to the extent that the board focused on the disparity between the petitioner's complaints of pain and the objective evidence with respect to absence of atrophy and presence of muscle bulk, it impliedly found the petitioner's claim of total physical impairment to be exaggerated.

While, if assessing the totality of the evidence in this case *de novo*, we might have concluded differently than did the majority of the board, that is not our province on review. *See Averill v. Dreher-Holloway*, 134 N.H. 469, 472, 593 A.2d 1149, 1151 (1991). The findings and rulings of the board must be upheld unless they lack evidentiary support or are tainted by legal error. *Id.* The petitioner has not persuaded us that the board's decision does not rest on competent evidence or is otherwise unreasonable.

■■ As for the petitioner's claims of legal error, we find none. Although the petitioner argues that the board should have liberally construed the law to resolve reasonable doubts in his favor, that maxim applies to the construction of the statute involved, *see Petition of Blackford*, 138 N.H. 132, 135, 635 A.2d 501, 503 (1993); *Petition of Correia*, 128 N.H. 717, 721–22, 519 A.2d 263, 266 (1986), not to the task of weighing evidence. Furthermore, we find meritless his argument that decisions of a lay-member majority of the board should be stringently scrutinized. The statute establishing the compensation appeals board, which sets forth a procedure for *de novo* review "by a 3-member panel at least one of whom shall be an attorney and who shall serve as chair," RSA 281-A:42-a (Supp. 1993) (effective until Jan. 1, 1994), makes no distinction among the panel members as to the weight of their votes. It requires only that there be "[a]t least 2 like votes . . . for a decision by the panel." *Id.* To do as

the petitioner asks and effectively discount the opinion of the lay-member majority would be to ignore our long history of respect for and deference to decisions by the compensation appeals board and other administrative boards comprised of non-attorney members. This we are not inclined to do.

*Affirmed.*

All concurred.