Compensation Appeals Board
No. 94-043

APPEAL OF LOUIS COTE

(New Hampshire Department of Labor Compensation Appeals Board)

June 6, 1995

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.,* of Portsmouth (*Charles B. Doleac* and *Christopher E. Grant* on the brief, and *Mr. Grant* orally), for the claimant.

*Wiggin & Nourie, P.A.,* of Manchester (*Richard P. Creedon* and *Andrew A. Merrill* on the brief, and *Mr. Creedon* orally), for the respondent.

JOHNSON, J. The claimant, Louis Cote, appeals a decision by the New Hampshire Department of Labor Compensation Appeals Board (the board) that he is ineligible for workers' compensation benefits pursuant to RSA 281-A:23 (Supp. 1994). The parties dispute whether the claimant suffered a work-related injury in 1985 and, if so, whether this injury engendered his painful back condition in 1990. We reverse and remand.

In 1982, the claimant began working for the respondent, James River Corporation, at its manufacturing plant in Berlin. On February 5, 1985, the claimant was working with a machine that wraps together washroom paper towels. The machine jammed and the claimant reached underneath to remove the obstruction. As the claimant was reaching under the machine, he felt a "pop" in his back. He felt intense pain and had difficulty walking.

In the five years following this incident, the claimant's back pain necessitated his extended absence from work three times. He received temporary disability compensation during those periods. Although the respondent had referred the claimant to a number of different doctors and a chiropractor to treat his back condition, the pain persisted. Dr. Jay L. Neil treated the claimant from March through September 1985. He told the claimant that little could be done to permanently alleviate

his condition and encouraged him to return to work despite his pain. The claimant was back at work in January 1990 when his back pain suddenly intensified during a sixteen-hour shift. He began his third leave of absence, which ended on April 30, 1990.

On January 31, 1992, the claimant met with an orthopedist, Dr. H. James Forbes. Dr. Forbes was the first doctor seen by the claimant who was in no way affiliated with the respondent. Dr. Forbes determined that the claimant had a degenerative disc. He told the claimant that surgery to excise the disc might eliminate his back problem. The claimant began a fourth leave of absence on May 26, 1992.

The claimant informed the respondent that he wanted to undergo the surgery suggested by Dr. Forbes. On June 25, 1992, at the respondent's request, the claimant was seen by Dr. Stephen R. Klein for a second opinion. Dr. Klein reported that he found Dr. Forbes' recommendation "somewhat draconian."

The claimant then saw an orthopedic surgeon, Dr. Roy Hepner, for a third opinion as to whether back surgery would alleviate his pain. After examining the claimant Dr. Hepner wrote: "In view of the chronicity and severity of the symptoms, and failure of all conservative modes of treatment, I feel that this patient is an excellent candidate for reconstructive spinal surgery." On June 4, 1992, the respondent denied coverage for the proposed surgery.

Following a hearing, the department of labor "determined that the treatment beginning in January 1990 and continuing is not related to the original work injury of February 1985. . . . The 1990 diagnosis of disc problems is a new diagnosis and has not been shown related to bending at work in February, 1985." On August 10, 1992, the claimant had the surgery to excise his abnormal disc.

On August 6, 1993, the board held a *de novo* hearing. In its decision, the board framed the issue by asking the following question: "Is the claimant's current medical condition and period of disability causally related to the injury which occurred on February 5, 1985 and if so, is the incident of February 5, 1985 an injury which arose out of and in the course of employment." The board discussed the 1985 injury and stated that it had "received no evidence, by way of testimony or medical records, that the claimant was doing anything more unusual than bending over and perhaps twisting to one side when he heard something pop in his back. . . . [H]e was merely bending over in some fashion while at work." Thus, the board concluded that "the painful event suffered by the claimant on February 5, 1985 was not an 'injury' as defined by the Workers' Compensation Statute." Accordingly, the board denied the claimant benefits under RSA chapter 281-A. The board did not address the

question of whether the "painful event" in 1985 was related to the claimant's back problem in 1990. The claimant's motion for rehearing was denied, and this appeal followed.

On appeal the claimant argues that the respondent had not questioned whether his 1985 injury arose out of his employment, and that the board improperly raised the issue *sua sponte*. He also argues that even if the board properly reached the issue of causation, its findings were erroneous because the respondent presented no evidence that the injury was not work-related. The respondent counters that the issue of whether the 1985 injury was work-related was properly before the board and that the evidence supported the finding that the claimant's 1985 injury bore no relation to his employment.

Because we agree with the claimant that the board erred in concluding that the claimant's 1985 injury lacked the requisite nexus to his employment, we need not decide whether the board properly considered the issue.

■ "We do not overturn agency decisions or orders, absent an error of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." *Appeal of Stetson,* 138 N.H. 293, 295, 639 A.2d 245, 247 (1994) (quotation omitted). To obtain workers' compensation benefits, a claimant has the initial burden to establish a *prima facie* case. *Id.* at 297, 639 A.2d at 248. Once the claimant has met this burden, the burden of production shifts to the respondent to rebut the claims made. *Id.* This court construes liberally the Workers' Compensation Law in order to give the broadest reasonable effect to its remedial purpose. *See Whittemore v. Sullivan Cty. Homemaker's Aid Serv.,* 129 N.H. 432, 435, 529 A.2d 919, 920–21 (1987). Thus, when construing the statute, we resolve all reasonable doubts in favor of the injured worker. *See Petition of Markievitz,* 135 N.H. 455, 458, 606 A.2d 800, 802 (1992).

■ The New Hampshire Workers' Compensation Law provides benefits to workers who suffer accidental injuries only if their injuries "aris[e] out of and in the course of employment." RSA 281-A:2, XI. To show that his injury "arose out of employment," the claimant bore the burden of proving that either his act of bending under the towel machine or cumulative work-related stress to his back, *see Appeal of Briand,* 138 N.H. 555, 559, 644 A.2d 47, 49–50 (1994), probably caused or contributed to his disability under a two-pronged test. *See Appeal of Briggs,* 138 N.H. 623, 628, 645 A.2d 655, 659 (1994). "Under this test, the [injured worker] must prove legal causation, that is, that his injury is work-connected, and medical causation, that is, that his

disability was actually caused by the work-related event." *Id.* (quotation and brackets omitted).

The first prong, legal causation, "defines the degree of exertion that is necessary to make the injury work-connected. The test to be used depends upon the previous health of the employee." *Id.* (quotation omitted). The test also "takes into account the 'personal risks' contributed by the worker and the 'employment risks' present in his work." *New Hampshire Supply Co. v. Steinberg,* 121 N.H. 506, 508, 433 A.2d 1247, 1249 (1981) (quotation omitted). If the worker had no preexisting weakness or disease at the time of the injury, "[e]vidence of unusual strain is not a legal requirement. The question is not whether the level of exertion would affect the ordinary person but whether it affected the claimant." R. GALWAY, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 4.02, at 4-3 (1994); *see Bartlett Tree Experts Co. v. Johnson,* 129 N.H. 703, 708, 532 A.2d 1373, 1376 (1987).

Before his 1985 injury, the claimant was twenty-eight years old and in relatively good health. His work with the towel machine, however, required him to exert himself. In a letter dated October 26, 1983, the respondent acknowledged that while the claimant is packing paper towels, he "is required to stretch and use repetitive motions throughout his work day."

The respondent alleges that the board heard "no testimony that the claimant was lifting, grabbing, pulling, or exerting himself." Its October 1983 letter belies this claim. Moreover, at his hearing before the board, the claimant testified as follows: "I was reaching for a broken package or what had plugged underneath my bander—it's a reaching-and-twisting motion at approximately ankle level, probably and possibly two to three feet—well, two feet, anyway, away from where my feet were. And I heard a—I felt and heard a 'pop' . . . ."

The respondent presented no evidence to refute the claimant's testimony or its own admission in the 1983 letter. We conclude that the board, applying the proper standard, could not reasonably find that the claimant had not met his "burden of persuasion to prove it is more likely than not that his injury was work-related." *Stetson,* 138 N.H. at 297, 639 A.2d at 248; *see* RSA 541:13 (1974). The claimant proved legal causation.

Under the second prong, medical causation, the claimant had to show that the work-related activities either caused or contributed to his injury as a matter of medical fact. *Id.* at 296, 639 A.2d at 248. "The medical causation of a [back] injury is a matter properly within the province of medical experts, and the board was required to base its

findings on this issue upon the medical evidence rather than solely upon its own lay opinion." *Briggs,* 138 N.H. at 629, 645 A.2d at 659.

 None of the numerous doctors who had examined the claimant expressed any doubt that the claimant's work contributed to his 1985 injury. Although the doctors were not asked whether they thought the claimant's work activities contributed to his disability, their medical reports implicitly express their consensus that the claimant's back condition was aggravated or caused by his employment.

In a 1993 letter, Dr. Sachs opined that bending at a forty-five-degree angle "indeed subjects the spine to its abnormal loading strain and more likely than not would produce a ligament-type tear or injury." Other doctors also found a connection between the claimant's injury and his work. Dr. Neil opined that the claimant had suffered "an acute lumbosacral strain" when he bent under the towel machine at work in 1985. On November 29, 1985, in a letter to the respondent, Dr. Richard N. Gagnon reported that the claimant's back problem "is certainly a direct result of his previous injury working. I think that the twisting and turning he does at his work certainly has aggravated his situation." Even Dr. Klein conceded that he could not "deny that an injury to the disc occurred in 1985."

In light of these reports, we find that the claimant proved medical causation. The board's finding to the contrary is not supported by any evidence and is clearly unreasonable. *See* RSA 541:13. Accordingly, we conclude that the claimant's 1985 injury arose out of his employment.

The board did not reach the question of whether the claimant's 1985 injury engendered his back condition in 1990. We ordinarily would remand this unresolved issue; however, when a lower tribunal has not addressed a factual issue, but the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law. *Cf. Briggs,* 138 N.H. at 628, 645 A.2d at 659; *In re Trailer and Plumbing Supplies,* 133 N.H. 432, 438–39, 578 A.2d 343, 346 (1990) (affirming trial court that used faulty logic but reached correct result). Here, because we have before us the same documentary record that was available to the board, we will address the purely legal question of whether a rational fact finder could conclude that the claimant's back condition in 1990 did not derive from his earlier work-related injury. We note that this case is distinguishable from *Appeal of Gamas,* 138 N.H. 487, 642 A.2d 925 (1994), where we deferred to a board ruling that was unsupported by most of the evidence. The *Gamas* board, which considered live testimony from medical experts, was in a better position to assess the experts' credibility, *cf. Masse v. Commercial Union Ins. Co.,* 136 N.H. 628, 632, 620 A.2d 1041, 1044 (1993) (less deference given to trial

court's findings derived entirely from submitted documents), and was therefore "free to disregard or accept, in whole or in part," conflicting expert testimony. *Gamas,* 138 N.H. at 490–91, 642 A.2d at 927.

■ An employer must pay the medical expenses of an injured employee "for such period as the nature of the injury may require." RSA 281-A:23, I. "An employer thus has a continuing obligation to provide or to pay for medical, hospital, and remedial care for as long as is required by an injured employee's condition." *Town of Hudson v. Wynott,* 128 N.H. 478, 481, 522 A.2d 974, 975 (1986). We therefore must examine the causal chain between the original, 1985 work-related injury and the claimant's back condition in 1990. *See id.*

"Once the work-connected character of any injury has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause." *Town of Hudson,* 128 N.H. at 481, 522 A.2d at 976 (brackets, quotation, and ellipses omitted).

Here, the respondent does not allege the existence of an intervening, independent accident. It argues only that the claimant did not meet his burden of proof. Yet five of the six doctors whose full reports are part of the record disagree with the respondent's stance. Doctors Forbes, Gagnon, Hepner, Neil, and Sachs agreed that the claimant's back condition was most likely triggered by his 1985 injury. Dr. Sachs reported the following:

> It is my best medical opinion, and more probable than not beyond reasonable certainty, that Mr. Cote's condition has worsened over time . . . . This more probable [*sic*] than not related to the injury that the patient states that he sustained from February 5, 1985 which was a work-related injury.
>
> . . . .
>
> The fact that the patient's symptoms did not improve since 1985 and he continued to worsen, is consistent with the deteriorating disc disease produced by the initial event of the tear and injury to the annulus.

Dr. Neil, who first treated the claimant in March 1985, reported in 1993 that "the current degenerative condition of the L4-5 disc is most likely causally related to the 1985 work injury." Dr. Gagnon reported that "[the claimant] probably had the same condition in February of 1985 when he first injured his back at work, that he had when he was seen by me in February of 1990." Dr. Forbes reported that he believed that the claimant's painful back condition before his surgery in 1992 "was a direct result of [the claimant's] injury that occurred at work."

582

Dr. Hepner also attributed the claimant's abnormal disc to the 1985 injury.

In June 1992, after Drs. Forbes, Hepner, and Sachs had recommended that the claimant have his abnormal disc excised, the respondent wrote a letter to Dr. Klein in which it expressed its inclination to deny coverage for the proposed surgery and asked the doctor to "clarify the diagnosis and proper medical care." In response, Dr. Klein examined the claimant and reported that he could not "state with a reasonable degree of certainty" that the claimant's condition in 1990 derived from his earlier injury. He did not reveal the basis of his opinion.

The board heard no live testimony from the doctors and saw only their written medical reports. Based on the record before us, we hold that a reasonable fact finder would necessarily find that the claimant has proved his case by a preponderance of the evidence. *See* RSA 541:13; *cf. Masse,* 136 N.H. at 632, 620 A.2d at 1044. We reverse the board's ruling and remand for a calculation of benefits due.

*Reversed and remanded.*

All concurred.