Compensation Appeals Board
No. 95-544

## APPEAL OF JUDY LALIME

(New Hampshire Compensation Appeals Board)

December 31, 1996

*Engel, Gearreald & Gardner, P.A.*, of Exeter (*Mark S. Gearreald* on the brief and orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Andrew A. Merrill* on the brief, and *Thomas Aylesworth* orally), for the respondent, K-Mart Enterprises of New Hampshire.

JOHNSON, J. The petitioner, Judy Lalime, appeals the decision of the New Hampshire Compensation Appeals Board (board) that her medical treatments subsequent to April 28, 1992, were not the responsibility of her former employer, K-Mart Enterprises of New

Hampshire (respondent), and that she was not entitled to temporary partial disability payments. We affirm in part, vacate in part, and remand.

The petitioner was employed, in various capacities, by the respondent at its Rochester store from August 1989 through September 1992. In August 1991, while working as a sales associate in the appliance department, the petitioner injured her right elbow and wrist by moving several television sets from a storeroom to the showroom floor. She returned to work in the appliance department that fall but reinjured her elbow, and again left work, in December 1991. The petitioner returned to K-Mart in March 1992 in a light duty capacity, initially as a cashier and later as a "door greeter." In April 1992, her hours as a door greeter were reduced from forty hours per week to thirty-two. The petitioner left K-Mart in September 1992 and began working at Easy Street Shoe Company (Easy Street). She then sought temporary partial disability benefits for reductions in pay resulting from her position as door greeter, her decreased hours, and her lower earnings at Easy Street. The respondent denied her request.

Following her injury in August 1991, the petitioner sought treatment from a number of doctors to determine the nature and extent of her injuries, and for pain management therapy. Notably, the petitioner's last appointment with her initial treating physician, Dr. Robert H. Harrington, was on April 28, 1992, at which time Dr. Harrington believed that she had reached "a point of maximum medical improvement." While the petitioner continued to seek diagnostic and rehabilitative treatment for continued pain in her elbow through December 1992, the respondent refused to reimburse the petitioner for medical expenses incurred after April 28, 1992.

The petitioner sought compensation for medical expenses related to her arm injury pursuant to RSA 281-A:23 (Supp. 1992) (amended 1994, 1995, and 1996), and temporary partial disability payments under RSA 281-A:31 (Supp. 1992) (amended 1994). The hearing officer denied both claims, and the petitioner appealed this decision to the board. See RSA 281-A:43, I(b) (Supp. 1996). The board ruled that the respondent was not responsible for any medical costs incurred after April 28, 1992 – the date that Dr. Harrington determined that the petitioner had reached a point of maximum medical improvement. The board also denied the petitioner's request for temporary partial disability payments. The petitioner's motion for rehearing was denied, and this appeal followed.

## I. Medical Reimbursement

The petitioner first argues that the board erred in finding that the respondent was not responsible for medical costs incurred after April 28, 1992. In so ruling, the board held that

> the claimant has not met her burden of proof. From the medical records, all objective tests yielded negative results. The medical evidence distinctly shows that on April 28, 1992 Dr. Harrington, her own treating physician states that "he feels that she has reached a point of maximum medical improvement."

■ We will not overturn the board's decision, except for errors of law, unless the petitioner has shown it to be clearly unreasonable or unjust. *Appeal of Cote*, 139 N.H. 575, 578, 660 A.2d 1090, 1093 (1995); *see* RSA 541:13 (1974). The petitioner argues that the board erred as a matter of law in finding that she had not carried her burden of proof with respect to the requirements of RSA 281-A:23, I (Supp. 1996). We agree.

■ "To obtain workers' compensation benefits, a claimant has the initial burden to establish a *prima facie* case. Once the claimant has met this burden, the burden of production shifts to the respondent to rebut the claims made." *Cote*, 139 N.H. at 578, 660 A.2d at 1093 (citation omitted). The burden of persuasion remains with the claimant, however. *See Appeal of Stetson*, 138 N.H. 293, 297, 639 A.2d 245, 248 (1994). RSA 281-A:23, I, provides that "[a]n employer subject to this chapter . . . shall furnish or cause to be furnished to an injured employee reasonable medical, surgical, and hospital services, [and] remedial care . . . for such period as the nature of the injury may require." We have interpreted this statute to require that: "(1) the treatment must be reasonable; and (2) the treatment may continue only so long as required by the nature of the injury." *Appeal of Levesque*, 136 N.H. 211, 214, 612 A.2d 1333, 1334 (1992).

■■ Thus, in order for a claimant to receive reimbursement, the treatment in question must be "reasonable." The board found that the petitioner failed to carry her burden of proof because all the objective tests revealed no further injury. We must determine, therefore, whether the fact that the petitioner's test results were negative renders the cost of testing and treatment unreasonable. "We construe the [workers' compensation] statute liberally, resolving all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to

[its] remedial purpose . . . ." *Appeal of Griffin*, 140 N.H. 650, 654, 671 A.2d 541, 543 (1996). A determination of the "reasonableness" of the treatment should not be outcome dependent. Rather, the proper analysis is whether the petitioner presented objective evidence showing, that at the time the tests were ordered, it was reasonable for her to seek further treatment, be it diagnostic or palliative. Therefore, the board's finding that reimbursement was not warranted because the tests yielded negative results is not sufficient to support their conclusion that the petitioner has failed to meet her burden of proof.

■ We also find that the board improperly relied on a finding of "medical endpoint" to deny the petitioner's request for reimbursement. It is well settled that the fact that a patient has reached a "medical endpoint" is not conclusive as to whether the treatments have extended beyond the period required by the nature of the injury. *See Levesque*, 136 N.H. at 214, 612 A.2d at 1334-35. Reimbursable medical care may include treatments that are both curative and palliative in nature. *Id.* While determination of a "medical endpoint" may indicate that the curative value of further treatments is nil, it does not establish that there would be no palliative benefits to be reaped from further medical care.

Therefore, we vacate the ruling of the board with respect to reimbursement of the petitioner's medical costs. Because "it is the board's role, and not ours, to weigh all relevant factors in the first instance," *Appeal of Normand*, 137 N.H. 617, 621, 631 A.2d 535, 537 (1993) (citations omitted), we remand for a determination of reimbursable medical costs consistent with the standards set forth in this opinion.

*II. Temporary Partial Disability Payments*

■ The petitioner next argues that the board erred as a matter of law in not awarding her temporary partial disability benefits under RSA 281-A:31 and New Hampshire Administrative Rules, Lab 506.02(g). A claimant is entitled to benefits if the disability resulting from the injury is such that the claimant is able to return to work, but at a lower earning capacity because of that injury. *See* RSA 281-A:31; N.H. ADMIN. RULES, Lab 506.02(g). "The test used to determine entitlement to compensation is whether the claimant is now able to earn, in suitable work under normal employment conditions, as much as he or she earned at the time of the injury." *Normand*, 137 N.H. at 621, 631 A.2d at 536-37 (quotations omitted). Workers' compensation benefits are intended to compensate for loss of earning capacity due to a work-related injury, however, and will

not be awarded if the loss in income is due to another cause. *Id.* at 620, 631 A.2d at 537.

The petitioner sought temporary partial disability benefits for the loss in pay attributable to: (1) her transfer from a position in the appliance department to door greeter; (2) her subsequent reduction in hours as a door greeter; and (3) her new position at Easy Street. The board found that the petitioner voluntarily reduced her hours as a door greeter and then left K-Mart for a forty-hour-per-week position at Easy Street without first requesting an increase in her hours at K-Mart. The board concluded that "[t]herefore the employer has met all its responsibilities with regard to compensation in this matter." We will not overturn the board's findings of fact unless they are clearly unlawful or unreasonable. *See* RSA 541:13. "Our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Appeal of Gamas,* 138 N.H. 487, 490, 642 A.2d 925, 927 (1994) (quotations omitted).

The first basis of the petitioner's claim for temporary partial disability benefits is that her earnings for a forty-hour work week in the appliance department were more than those earned for a forty-hour work week as a door greeter. At the hearing before the board, the petitioner testified that while the hourly rate of pay was the same for both jobs, her average weekly salary was lower as a door greeter because she received commissions, in addition to her base salary, as a salesperson in the appliance department. The board, however, failed to specifically rule on whether the petitioner earned less at forty hours as a door greeter. The board inexplicably denied the petitioner's request for a finding of fact that she did indeed earn less "both at K-Mart and the [Easy] Street Sales Corporation" after her injury, while at the same time granting the request for a finding that the petitioner's average weekly wage before her injury was $253.20. Notably, this figure, according to the petitioner, includes commissions earned. While it is well settled that we will not overturn a decision of the board if based upon findings supported by the record, "[t]hese principles . . . rest on the presumption that the board has made findings of fact sufficient to form the basis for meaningful judicial review." *Appeal of Kehoe,* 139 N.H. 24, 27, 648 A.2d 472, 474 (1994). The board's decision fails to address coherently this segment of the petitioner's claim, and we accordingly remand for a determination of whether the petitioner is entitled to compensation for any difference in pay attributable to her transfer from the appliance department to door greeter.

There is ample evidence, however, to support the board's finding that the petitioner voluntarily reduced her hours as door greeter, and never attempted to increase her hours before leaving K-Mart. For example, the petitioner signed a document indicating that she requested a reduction in hours in order to allow a co-worker to increase her hours. Furthermore, this same document indicated that the petitioner could return to a forty-hour work week at her own request. Testimony of the petitioner's supervisor at K-Mart further supported the finding that the reduction in hours was voluntary and that she never asked to have her hours increased. While there was conflicting testimony with respect to these findings, we will not overturn a determination of the fact finder who is in the best position to weigh the competing evidence. *Cf. Tzimas v. Coiffures By Michael*, 135 N.H. 498, 501, 606 A.2d 1082, 1083 (1992).

■ The petitioner argues that because we construe the workers' compensation *statute* liberally, and resolve all reasonable doubts with respect to statutory construction in favor of the claimant, *see Griffin*, 140 N.H. at 654, 671 A.2d at 543, she is entitled to have all reasonable *factual* inferences construed in her favor. This simply is not true. "[T]hat maxim applies to the construction of the statute involved, not to the task of weighing evidence." *Gamas*, 138 N.H. at 491, 642 A.2d at 928 (citations omitted). Therefore, we affirm the board's ruling with respect to the petitioner's decline in earnings as a result of the reduction in hours as door greeter since there is ample evidence that it did not arise from her injury.

As for the petitioner's final argument, the board's insufficient findings again prevent us from properly reviewing the issue. *See Kehoe*, 139 N.H. at 27, 648 A.2d at 474. The petitioner argues that because of her injury, her overall earning capacity has decreased. The proper analysis is whether a subsequent reduction in income is due to her physical injury or the result of another cause. *See Normand*, 137 N.H. at 620, 631 A.2d at 537. With respect to her position at Easy Street, the board's only finding was that the petitioner sought employment there; the board did not address whether this position was necessitated by her injury or was the result of some other factor. Therefore, we remand for a new hearing with respect to this issue as well.

Consequently, while we affirm the ruling of the board that the petitioner is not entitled to benefits arising from her voluntary reduction in hours as door greeter, we remand the case to the board for a determination of whether there are benefits due arising from any reduction in pay attributable to the change in employment from

the appliance department to door greeter and the circumstances surrounding her departure from K-Mart.

*Affirmed in part; vacated in part; remanded.*

All concurred.