Compensation Appeals Board
No. 95-316

APPEAL OF DENISE KEHOE

(New Hampshire Compensation Appeals Board)

November 13, 1996

413

*Sullivan & Gregg, P.A.*, of Nashua (*James H. Leary* on the brief and orally), for the claimant.

*Kelliher & Clougherty*, of Manchester (*Thomas W. Kelliher* on the brief), and *Elizabeth Cazden*, of Manchester, by brief and orally, for the respondents, Lockheed-Sanders Company and Liberty Mutual Insurance Company.

BROCK, C.J. This is the claimant's second appeal from the New Hampshire Compensation Appeals Board's (board) denials of workers' compensation benefits. We reverse and remand for calculation of benefits.

The claimant, Denise Kehoe, worked as an assembler at the Lockheed-Sanders Company (Sanders) from August 1979 to March 1991. During those twelve years, she was regularly exposed to numerous chemicals while performing her job, including lacquer thinner, HumiSeal, isopropyl alcohol, RTV adhesive sealant, trichloroethane, and chemical adhesives such as Locktite. Many of these substances were rated by their manufacturers as posing a health hazard, with health hazard ratings as high as "three" ("four" being the most hazardous). The claimant used many of these chemicals on a daily basis, breathing their fumes as she applied them with a brush to seal joints or to clean or dissolve substances. Her work sometimes entailed heating joints previously soldered with HumiSeal (a "serious" hazard rating of "three") in order to disassemble the materials; the heated compound exposed her to additional fumes beyond those emanating from the unheated HumiSeal containers.

Prior to her employment at Sanders, the claimant did not have severe headaches or breathing difficulties. Approximately two months after commencing her employment at Sanders, the claimant began experiencing headaches at work. As time passed, her headaches worsened into migraines and additional symptoms developed, such as dizziness, sinus irritation, and muscle aches. Beginning in 1989, her tenth year at Sanders, she began experiencing breathing disorders, including bronchospasm and chronic sinus problems. By March 1991, the combination of symptoms was so debilitating that she was compelled to take a medical leave from work. Although her condition improved during her leave, her symptoms recurred during two separate visits to Sanders, and she was forced to extend her medical leave. In May 1991, her doctors advised her not to return to work. At this point, she had developed hypersensitivities to a wide variety of chemicals, including not only the chemicals she worked with at Sanders but also many household cleaners, perfumes, and other things encountered in ordinary non-work life.

During the years that the claimant was employed at Sanders, her treating physician, Dr. Alexis-Ann Bundschuh, had difficulty diag-

nosing her condition, in part because the symptoms accelerated in both number and degree over the years. Dr. Bundschuh referred the claimant to several specialists, including a pulmonary consultant who diagnosed her as suffering from chronic asthma, and an occupational health specialist who diagnosed her as suffering from "[b]ronchospastic airway disease reactive to nonspecific irritants with . . . sensitivity to a vast array of various at-home and at-work fumes and smells." Soon after leaving her job, the claimant also saw Dr. Daniel Kinderlehrer, a specialist in environmental medicine, who diagnosed her as "suffering from Multiple Environmental Sensitivities, with a severe Multiple Chemical Sensitivity Disorder." This diagnosis was "evident on the basis of her significant symptomology provoked by exposure to low doses of chemicals."

The claimant filed for workers' compensation benefits in 1991. Her claim was denied by a hearings officer, and the claimant appealed to the board. After a hearing, the board upheld the denial, finding that the claimant did not suffer from an occupational disease as defined in RSA 281-A:2, XIII (Supp. 1995). She appealed and we reversed, holding that multiple chemical sensitivity syndrome (MCSS) due to workplace exposure to chemicals is an occupational disease compensable under our workers' compensation statute. *Appeal of Kehoe*, 139 N.H. 24, 26, 648 A.2d 472, 474 (1994). We remanded to the board "for a determination of whether the claimant suffers from [MCSS] and, if she does, whether the workplace caused or contributed to the disease." *Id.* at 27, 648 A.2d at 474.

On remand, the board held a new hearing and again denied the claim. The board found that the claimant does suffer from MCSS, but concluded that she "failed to prove by a preponderance that the MCSS is causally related to a risk or hazard of employment at Sanders," and therefore "failed to meet her burden of proving causation." This appeal followed.

■ We will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable. *Appeal of Lambrou*, 136 N.H. 18, 20, 609 A.2d 754, 755 (1992); RSA 541:13 (1974). The board's findings of fact will not be disturbed if they are supported by competent evidence in the record, *Lambrou*, 136 N.H. at 20, 609 A.2d at 755, upon which the board's decision reasonably could have been made. *See Appeal of Normand*, 137 N.H. 617, 619, 631 A.2d 535, 536 (1993); *Town of Hudson v. Wynott*, 128 N.H. 478, 483, 522 A.2d 974, 977 (1986).

■ To make out a claim for workers' compensation, a claimant is required to show that her injuries arose "out of and in the course of

[her] employment." RSA 281-A:2, XI (Supp. 1995). To show this, the claimant must prove by a preponderance of the evidence that her work-related activities "probably caused or contributed to [her] disability." *Appeal of Cote*, 139 N.H. 575, 578, 660 A.2d 1090, 1093 (1995).

The test for causation has two prongs; a claimant must prove both legal causation and medical causation. *Id.* at 578, 660 A.2d at 1093. Legal causation entails a showing that the claimant's injury is in some way work-related, while medical causation requires a showing that the injury was actually caused by the work-related event or condition. *Id.* at 578-79, 660 A.2d at 1093. The board did not make clear whether it found that the claimant failed to meet her burden with respect to legal or medical causation. We hold, however, that no reasonable board could have found that the claimant failed to meet her burden of proving either legal or medical causation on the record in this case. *See id.* at 579-80, 660 A.2d at 1094.

■ ■ "The legal causation test defines the degree of exertion that is necessary to make the injury work-connected." *Appeal of Briggs*, 138 N.H. 623, 628, 645 A.2d 655, 659 (1994). "The test to be used depends upon the previous health of the employee." *Id.* Where a claimant had a preexisting disease or condition prior to employment, she must show by a preponderance of the evidence that her employment "contribut[ed] something substantial" to her medical condition by demonstrating that the work-related conditions presented greater risks than those encountered in her non-employment activities. *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 231, 400 A.2d 1163, 1168 (1979). Where there is no preexisting condition, *any* work-related activity connected with the injury as a matter of medical fact would be sufficient to show legal causation. *Id.*

Here, although the board did not make an express finding as to whether the claimant's MCSS was a preexisting condition, the record clearly indicates that the claimant exhibited no unusual degree of headaches and experienced no respiratory or bronchial disease prior to going to work for Sanders. On the record before us, we can presume that the claimant had no preexisting condition. It is equally clear from the record that the claimant presented evidence, through expert medical witnesses and medical records, to connect her MCSS to her work environment. Although the board found this evidence unpersuasive on the *ultimate* issue of causation, we conclude that the board could not reasonably have found that the claimant had not met her minimal burden of establishing legal causation. *See Appeal of Cote*, 139 N.H. at 579, 660 A.2d at 1094.

■ The test for medical causation requires the claimant to establish, by a preponderance of the evidence, that the work-related activities *"probably cause[d] or contribute[d]* to the employee's [disabling injury] as a matter of medical fact." *Bartlett Tree Experts Co. v. Johnson*, 129 N.H. 703, 709, 532 A.2d 1373, 1376 (1987); *see Wheeler v. School Admin. Unit 21*, 130 N.H. 666, 672, 550 A.2d 980, 983 (1988). Even if the work-related activities did not *directly* cause or contribute to her injury, it would be sufficient to show that the activities caused the *activation* of her disabling symptoms. *Appeal of Briand*, 138 N.H. 555, 560, 644 A.2d 47, 50 (1994); *see also Bothwick v. State*, 119 N.H. 583, 588, 406 A.2d 462, 465 (1979) (finding medical evidence of *aggravation* of preexisting condition by work-related activities sufficient evidence of medical causation).

■ Medical causation "is a matter properly within the province of medical experts, and the board [is] required to base its findings on this issue upon the medical evidence rather than solely upon its own lay opinion." *Appeal of Cote*, 139 N.H. at 579-80, 660 A.2d at 1094. In the instant case, no physician who treated or evaluated the claimant expressed any doubt that work contributed to, or at a minimum aggravated, her condition. *See id.* at 580, 660 A.2d at 1094; *Bothwick*, 119 N.H. at 588, 406 A.2d at 465. "Because a claimant's treating physicians have great familiarity with [her] condition, their reports must be accorded substantial weight." *Appeal of Morin*, 140 N.H. 515, 519, 669 A.2d 207, 210 (1995) (quotation omitted). Dr. Albee Budnitz, a pulmonary consultant, concluded that the claimant suffered from "[a]sthmas of mixed variety[, p]robably with multiple factors as precipitants including stress, respiratory infections, some degree of allergy and certainly multiple chemical irritants the most obvious of which is T.D.I." HumiSeal contains T.D.I. Dr. Barbara O'Dea, an occupational health specialist, who was also consulted on referral, opined that although "it would be difficult to say that her chronic exposures at work initiated her basic problem," the claimant did "show[] evidence that exposures to fumes at work cause exacerbation of her underlying condition . . . ."

Dr. Bundschuh ultimately concluded: "Given that [the claimant] currently does have hypersensitivity syndrome, exposure to her work environment, on [a] historical basis, does seem to be precipitating symptoms." Although unable to "prove that [the claimant's] exposure to her work environment caused her breathing problems," Dr. Bundschuh believed that such exposure "more probably than not" was causing the symptoms which made the claimant "unable to work." Dr. Kinderlehrer expressed a similar opinion that the claimant's condition was "causally related to exposure to toxic

xenobiotic agents in the workplace." He found her asthma to be "consistent with two classic types of occupational asthma," and noted that "once a patient has been sensitized [to the chemical agents], extremely low concentrations may result in airway spasm." In addition, he stated that her headaches and muscle pain were "consistent with chemical toxicity."

To counter the unanimous opinions of the claimant's treating physicians on the issue of causation, the respondents relied on two medical experts, Dr. John A. Davis and Dr. Charles Godefroi. Neither, however, offered a direct opinion about the causation issue. One took issue with our holding in the claimant's first appeal that MCSS is an occupational disease, see Appeal of Kehoe, 139 N.H. at 26, 648 A.2d at 474, and both opined that the claimant did not, in their medical opinions, "meet all the established criteria" for MCSS. This testimony bears on the question of *whether* the claimant has MCSS, a question the board answered in the affirmative. Read broadly, the record reveals only minimal evidence from the respondent's experts which can be viewed as bearing on *causation*, and none of this evidence was responsive to the question of whether the claimant's work environment "activated" or "aggravated" her MCSS. See Appeal of Briand, 138 N.H. at 560, 644 A.2d at 50; Bothwick, 119 N.H. at 588, 406 A.2d at 465.

The overwhelming balance of medical evidence relating to causation is the opinions offered by the claimant's treating physicians. Nevertheless, the board found that the claimant did not meet her burden as to causation. Having acknowledged "several references [made] by treating physicians to the fact that the environment at Sanders was *contributing to* her present symptoms," the board concluded that "the medical opinions post 1991 drawing a connection between chemical exposure at work and the resulting complaints were *largely conjectural* based upon claimant's history generated after the fact." (Emphasis added.) The board cited no medical evidence to support this conclusion and relied instead on its own lay opinion as to the reliability of the evidence presented by the claimant. Appeal of Briggs, 138 N.H. at 629, 645 A.2d at 659. This was error. Id.

■ The medical evidence presented by the claimant's physicians consisted of informed medical conclusions, not merely conjectural opinions, based on the claimant's well-documented medical history. See Wynott, 128 N.H. at 485, 522 A.2d at 978. The doctors "did not serve merely as a conduit for the claimant's complaints." Id. Although the board is entitled to ignore uncontradicted medical testimony, it must identify the competing evidence or the consider-

ations supporting its decision to do so. *See Wynott*, 128 N.H. at 484-85, 522 A.2d at 978; 2A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 79.52(d), at 15-426.156 (1996). The board did not cite to any competing evidence to explain its rejection of the claimant's uncontroverted evidence that her work environment contributed to her symptoms, and its decision was therefore unreasonable. *See Appeal of Normand*, 137 N.H. at 619, 631 A.2d at 536; *see also* RSA 541:13.

In concluding that the claimant's physicians' medical opinions were "largely conjectural," the board expressed some concern regarding the claimant's medical records. First, the board noted that "none of the doctors throughout the 80's were willing to make a diagnosis of MCSS." Second, the board observed "the fact that prior to 1991 there were no references within the medical records of complaints registered by [the] claimant about the chemicals encountered at work." Finally, the board articulated its "strong suspicion" that the "MCSS with which [the claimant] is afflicted is derived from some non-work related cause which no one has really pinpointed."

█ These concerns are speculative and insufficient to justify the board's rejection of the claimant's medical evidence. The board must base its decision on evidence presented and may not base its decision "solely upon its own lay opinion." *Appeal of Briggs*, 138 N.H. at 629, 645 A.2d at 659. Therefore, the board may not speculate as to the existence of some as yet unidentified cause for the claimant's MCSS. Second, even if the board's suspicion held true, it would not be dispositive of the claimant's claim; the fact that her work environment probably *contributed to* or *aggravated* her MCSS would be sufficient to meet her burden of proof. *See Bartlett Tree*, 129 N.H. at 709, 532 A.2d at 1376; *Bothwick*, 119 N.H. at 588, 406 A.2d at 465. As the record reveals, the claimant presented uncontroverted evidence on this issue.

█ We caution that our holding today should not be construed as mandating a grant of workers' compensation benefits for every claimant who presents uncontroverted medical testimony. *See Wynott*, 128 N.H. at 486, 522 A.2d at 978. Based on the medical evidence presented in the record before us, however, no reasonable finder of fact could conclude that the claimant did not meet her burden of demonstrating that it was more likely than not that her exposure to toxic chemicals at work contributed to, or aggravated, her disabling condition. *See Appeal of Cote*, 139 N.H. at 579, 582, 660 A.2d at 1094-95. The claimant met her burdens as to both legal and medical causation. We therefore reverse the board's denial of the

claimant's workers' compensation claim and remand to the board only for a calculation of the claimant's benefits.

*Reversed and remanded.*

HORTON, J. did not sit; the others concurred.