# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

### In Case No. 2018-0310, <u>Appeal of Estate of William Quinn</u>, the court on August 20, 2019, issued the following order:

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioner, Linda Quinn, as widow of William Quinn and beneficiary of the Estate of William Quinn, appeals a decision of the New Hampshire Compensation Appeals Board (CAB). The CAB denied the Estate's request that the respondents, the Disability Rights Center of New Hampshire (DRC), and its insurer, Liberty Mutual Insurance Company, pay workers' compensation benefits to the Estate as a result of William Quinn's death from "acute intoxication by the combined effects of heroin and oxycodone." We affirm.

The pertinent facts are as follows. On July 19, 2012, Quinn was involved in a work-related accident in which he fractured his left ankle. Quinn underwent multiple surgeries, and, as a result, suffered from persistent and "profound" pain. He underwent various treatments for the pain, and was later diagnosed with complex regional pain syndrome. Liberty Mutual paid workers' compensation benefits for Quinn's injury and treatments.

Quinn was prescribed opioid medications to manage his pain, and he became dependent on them. In 2015, Quinn's doctor attempted to wean him off of the opioid medications, but Quinn experienced increased pain, attempted suicide, and was hospitalized for further suicidal ideation. Later that year, Quinn attended an in-patient program where he was successfully weaned off of the opioid medications. Liberty Mutual paid workers' compensation benefits for the in-patient program. Afterward, Quinn did not use opioid medications for a period of months; however, in September 2015, Quinn was again prescribed oxycodone for his pain.

On January 23, 2016, Quinn's body was found by his wife on the floor of their second home. Near Quinn's body were a bowl of crushed pills, a straw, an approximately half full wine bottle, a small black case with another straw in it, two unlabeled medicine bottles, and an oxycodone pill bottle — which had been filled on January 11, 2016 — with about 70 pills gone. The medical examiner, Thomas Andrew, M.D., concluded that the cause of Quinn's death was "acute intoxication by the combined effects of heroin and oxycodone" as a result of "acute substance abuse." Quinn had ingested heroin and oxycodone — each in a dose likely sufficient, on its own, to have caused his death.

The Estate filed a claim for workers' compensation benefits attributable to Quinn's death. See RSA 281-A:26 (2010) (providing certain benefits in the event of an employee's death resulting from a work-related injury). Liberty Mutual denied the claim. Thereafter, the Estate requested a hearing at the New Hampshire Department of Labor. In September 2017, a Department of Labor hearing officer denied the Estate's claim for benefits. The Estate appealed that decision to the CAB, which held a de novo hearing in February 2018.

In its March 30, 2018 order denying benefits, the CAB concluded that RSA 281-A:14 (2010), which provides that "[t]he employer shall not be liable for any injury to a worker which is caused in whole or in part by the intoxication . . . or by the serious and willful misconduct of the worker," precluded the payment of benefits. The CAB found that "the consumption of the amount of oxycodone at the time of death was inconsistent with [Quinn's] prescribed dosage," and that "heroin was not part of [Quinn's] prescribed medical treatment." The CAB noted that Quinn's body was found lying on the floor, near a bowl of crushed pills and other drugs and drug paraphernalia. The CAB found that Quinn "intentionally ingested the heroin" — observing that the use of heroin is illegal under both federal and New Hampshire law. The CAB determined that Quinn's "intentional ingestion of significant overdoses of both heroin and oxycodone simultaneously constitute[d] serious and willful misconduct." The CAB also found that the intentional "actions and misconduct of [Quinn were] an independent, intervening cause breaking the 'chain of causation' between his [compensable] work injury and his death," concluding that Quinn's death "was not causally related to [his] work injury." The CAB denied the Estate's motion for rehearing. This appeal followed.

RSA chapter 541 governs our review of CAB decisions. See RSA 281-A:43, I(c) (2010). The party seeking to set aside the CAB's order bears the burden of proof "to show that the [order] is clearly unreasonable or unlawful." RSA 541:13 (2007). "[A]ll findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable." Id. "[T]he order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." Id. When reviewing the CAB's findings, "our task is not to determine whether we would have found differently than did the [CAB], or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." Appeal of Phillips, 165 N.H. 226, 235 (2013) (quotation omitted). "The [CAB's] findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the [CAB's] decision reasonably could have been made." Id. (quotation omitted). We review the CAB's rulings on issues of law de novo. See Appeal of Wingate, 149 N.H. 12, 14 (2002); RSA 541:13.

The Estate argues that it is entitled to benefits because RSA 281-A:26 provides that, if an employee's death "results from" a compensable work-related "injury," as defined in RSA 281-A:2, XI (2010), then the employee's dependents receive compensation. RSA 281-A:26. The Estate contends that "where a work-related injury leads to addiction or substance abuse and, ultimately, to death, that death is compensable by the workers' compensation carrier."

DRC counters that the CAB properly denied benefits because Quinn's intentional conduct — the intentional ingestion of overdoses of heroin, an illegal drug, and oxycodone, which had been used in an unprescribed manner — was an independent intervening cause that broke the causal chain between the injury and his death. In support of its argument, DRC cites Cate v. Perkins Machine Co., 102 N.H. 391, 394 (1960) for the proposition that, even if an employee has a compensable work-related injury, post-injury conduct by the employee can operate to restrict or terminate the payment of benefits. We agree with DRC.

"To recover under the Workers' Compensation Law, an employee must show that his injuries arose out of and in the course of employment." Appeal of Kelly, 167 N.H. 489, 492 (2015); see also RSA 281-A:2, XI (defining "injury"). Here, there is no dispute that Quinn's initial ankle injury arose out of and in the course of his employment, and that, therefore, it was compensable under the statute. Thus, the primary issue in this appeal is whether Quinn's death "result[ed] from" his initial compensable ankle injury, and thus, whether his death is compensable. RSA 281-A:26.

In general, an injured employee is entitled to workers' compensation benefits for subsequent injuries, conditions, or necessary and reasonable treatments that are the "direct and natural result" of the initial injury. See Appeal of Bergeron, 144 N.H. 681, 684-85 (2000) (finding that, "absent an independent, intervening cause," an employer "has a continuing obligation to provide or to pay for medical, hospital, and remedial care for as long as is required by an injured employee's condition where it bears liability for the initial injury that necessitated the subsequent health care" (quotation omitted)); 1 Arthur Larson et al., Larson's Workers' Compensation Law § 10.01, at 10-2 (Matthew Bender, rev. ed. 2018) ("[A] subsequent injury . . . is compensable if it is the direct and natural result of a compensable primary injury."). However, even subsequent injuries that are the "direct and natural result" of the initial compensable injury can be ineligible for benefits when there is an independent intervening cause of the subsequent injury. See Bergeron, 144 N.H. at 684-85; Larson, supra § 10, at 10-1. "Our case law examining independent cause primarily involves the effect of a second identifiable incident." Bergeron, 144 N.H. at 685. "To constitute an independent cause of an injured employee's condition, an incident must be both a necessary and a material cause of that condition." Id. (quotation

3

omitted).  "When an employee suffers from an ongoing debilitative condition, the second incident must ordinarily be a distinct and extraordinary trauma-inducing event in order to qualify as an independent cause."  Id. at 685-86.  In Cate we endorsed the principle that, under certain circumstances, employee conduct can operate to restrict or terminate the payment of benefits attributable to a compensable work-related injury.  See Cate, 102 N.H. at 394 (considering whether "the employee's conduct in refusing to submit to the [surgical] operation [was] so arbitrary and unreasonable that the continued disability could be said to have resulted from his own misconduct.").

Here, the CAB stated that "even if [it were] to accept that [Quinn] was addicted to legally prescribed oxycodone as a direct result of the work injury," Quinn's "intentional ingestion of significant overdoses of both heroin and oxycodone simultaneously constitute[d] serious and willful misconduct."  The CAB, therefore, concluded that "the actions and misconduct of [Quinn were] an independent, intervening cause breaking the 'chain of causation' between his [compensable] work injury and his death," and that his death "was not causally related to [his] work injury."

In determining both causation and Quinn's intent, the CAB resolved questions of fact; therefore, we must deem its determinations prima facie lawful and reasonable.  See RSA 541:13; Appeal of Jenks, 158 N.H. 174, 178 (2008) ("The determination of the parties' intent is a question of fact . . . ."); F. A. Gray, Inc. v. Demopoulos, 122 N.H. 495, 496 (1982) ("Whether the defendant's continued disability was causally related to his original accident at work is a question of fact for the trial court . . . .").  Accordingly, the CAB's findings — that Quinn intentionally ingested significant overdoses of both heroin and oxycodone, and that his intentional actions constituted an independent intervening cause breaking the chain of causation — are entitled to deference. See New Hampshire Supply Co. v. Steinberg, 121 N.H. 506, 508-10 (1981) (deferring to the trial court's finding that the decedent's death was not caused by his work because there was evidence to support such a finding).  We will not disturb the CAB's findings if there is competent evidence in the record to support them.  See Phillips, 165 N.H. at 235.

The Estate argues that the CAB erred "by finding that Mr. Quinn's opioid abuse constituted an intervening cause when the uncontroverted medical evidence indicated that it was instead merely another link in the causal chain." In so arguing, the Estate relies heavily on the opinion of its expert, Seddon Savage, M.D., who opined that "it is highly unlikely, based on the history of which I am aware, that Mr. Quinn would have developed an opioid use disorder and died of an opioid overdose were it not for his work-related motorcycle injury."  The Estate contends that the CAB could not disregard Savage's unrefuted opinion as to the causal connection between Quinn's injury and his death, because "medical causation is a matter properly within the province of medical experts and the [CAB] is required to base its findings on this issue

4

upon the medical evidence." (Quotation omitted.) DRC counters that the CAB was reasonable when it did not give weight to Savage's opinion because of her "self-admitted bias and the fact that she did not treat [Quinn]." Thus, DRC contends, the Estate did not meet its burden of proof to show a causal connection between Quinn's injury and his death. We agree with DRC.

In general, the Estate is correct that "[m]edical causation is a matter properly within the province of medical experts, and the [CAB] is required to base its findings on this issue upon the medical evidence rather than solely upon its own lay opinion." Appeal of Kehoe, 141 N.H. 412, 417 (1996) (quotation and brackets omitted). However, "the [CAB] is entitled to ignore uncontradicted medical testimony," if it "identif[ies] the competing evidence or the considerations supporting its decision to do so." Id. at 418-19; see also Town of Hudson v. Wynott, 128 N.H. 478, 484-85 (1986). Here, the CAB observed that Savage was a "family friend of the [Quinns], who did not provide clinical care to [Quinn]," and stated that it "[was] not persuaded by Dr. Savage's opinion." See Kehoe, 141 N.H. at 417-18 (affording less weight to opinions of medical experts who did not treat the claimant). Indeed, Savage acknowledged that she did not treat Quinn specifically because of their family connection. Thus, the CAB identified the reasons why it was not persuaded by Savage's opinion; it was, therefore, entitled to reach a different conclusion. See id. at 418-19. Moreover, "[i]t is well settled that the weighing of the testimony and the assessment of its credibility [is] solely within the province of the [fact-finder] . . . [and] a reviewing court may not substitute its judgment for that of the [fact-finder] even though contrary testimony received would have supported a different result." Steinberg, 121 N.H. at 509-10.

Furthermore, as the CAB correctly observed, Savage did not disagree with the opinion of the medical examiner, Andrew, that the medical cause of Quinn's death was "acute intoxication by the combined effects of heroin and oxycodone." Nor did she disagree that Quinn had ingested each drug in a dose likely sufficient, on its own, to have caused his death. Notably, Savage did not conclude that the act of ingesting fatal doses of heroin and oxycodone was unintentional. Savage's opinion does not foreclose a finding of an independent intervening cause. See Bergeron, 144 N.H. at 684-85; Larson, supra § 10, at 10-1.

"In a workers' compensation case, the claimant bears the burden of proof on the issue of causation." Tzimas v. Coiffures by Michael, 135 N.H. 498, 500 (1992); see also Appeal of Lalime, 141 N.H. 534, 537 (1996) ("To obtain workers' compensation benefits, a claimant has the initial burden to establish a prima facie case."). "In order to prove causation, the plaintiff must produce evidence to prove it is more likely than not that [the] injury was work-related." Tzimas, 135 N.H. at 501. Here, the physical circumstances surrounding Quinn's death, taken together with Andrew's opinion as to the cause of death, support the CAB's finding of an independent intervening cause. The CAB was

not persuaded by Savage's opinion on the issue of causation, where the Estate bore the burden of proof.  Because "our task is not to determine whether we would have found differently . . . or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record," Phillips, 165 N.H. at 235 (quotation omitted), we conclude that the CAB did not err when it found that the intentional "actions and misconduct of [Quinn were] an independent, intervening cause breaking the 'chain of causation' between his [compensable] work injury and his death."

Other courts, when faced with similarly tragic factual scenarios, have reached the same conclusion.  See, e.g., Kilburn v. Granite State Ins. Co., 522 S.W.3d 384, 392 (Tenn. 2017) (finding that fatal overdose of oxycodone was independent intervening cause where employee failed to take medication in accordance with doctor's instructions); Sapko v. State, 44 A.3d 827, 843-44 (Conn. 2012) (finding that fatal interaction of excessive doses of oxycodone and seroquel was independent intervening cause that broke the chain of causation); Williams v. White Castle Systems Inc., 173 S.W.3d 231, 234, 236 (Ky. 2005) (finding that employee's use of non-prescribed Demerol, in addition to prescribed medications, caused his death and broke the causal link between his work-related injury and his death).

For the reasons set forth above, we conclude that the CAB's decision to deny workers' compensation benefits — on the ground that Quinn's intentional conduct was an independent intervening cause that broke the causal chain between his initial compensable work-related injury and his death — is amply supported by competent evidence in the record.  Accordingly, the Estate has not met its burden to show that the CAB's order is unjust or unreasonable.  See RSA 541:13; Phillips, 165 N.H. at 235.  In light of our decision, we need not address the CAB's alternative ground under RSA 281-A:14 for its decision to deny benefits, nor the parties' arguments related thereto.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,
Clerk**

6