NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Department of Health and Human Services
No. 2022-0181


PETITION OF M.P.
(New Hampshire Department of Health and Human Services)

Argued: March 30, 2023
Opinion Issued: June 7, 2023


Disability Rights Center-NH, Inc., of Concord (Sarah J. Jancarik on the brief, and Mia A. Fry orally), for the petitioner.

John D. MacIntosh, P.C., of Concord (John D. MacIntosh on the brief and orally), for the respondent.

Community Services Network, Inc., of Concord (Thomas G. Bunnell on the brief and orally), as amicus curiae.


DONOVAN, J.  The petitioner, M.P., seeks review by way of a petition for writ of certiorari of a Department of Health and Human Services Administrative Appeals Unit (AAU) decision finding him ineligible to receive developmental disability (DD) services pursuant to RSA chapter 171-A (2022).  The petitioner argues that: (1) the AAU's determination that he does not have a qualifying DD pursuant to RSA 171-A:2, V was an unsustainable exercise of discretion; (2)

the AAU erred in admitting certain testimony and considering the petitioner's Not Guilty by Reason of Insanity (NGRI) status; and (3) the AAU's failure to timely hold a hearing and issue a decision violated the Medicaid Act and his due process rights under the Federal and New Hampshire Constitutions. We conclude that the AAU's eligibility decision is sustainable and that the contested testimony was immaterial and did not prejudice the petitioner. Additionally, despite the significant delay that the petitioner experienced waiting for a hearing and a final decision, the delay was largely attributable to the global pandemic and the protective measures imposed in an effort to mitigate the spread of COVID-19. Pursuant to the federal authority relied upon by the petitioner, these circumstances constitute an "emergency" beyond the AAU's control, thereby exempting the AAU from the statute's scheduling requirement. Accordingly, we affirm.[1]

## I. Facts

The following facts were recited in the AAU's order or appear in the record. The petitioner has a complicated and lengthy medical history that spans from his early childhood to the present and includes numerous and often conflicting diagnoses. Relevant to this case, the petitioner has schizophrenia, but the parties disagree as to whether the petitioner also has autism spectrum disorder (ASD). In 2010, the petitioner was adjudicated NGRI and committed to the Secure Psychiatric Unit, where he resided until 2019 when he "stepped down" to a less-restrictive commitment at the New Hampshire Hospital (NHH). In 2020, the petitioner applied for DD services pursuant to RSA chapter 171-A. The application identified diagnoses for both ASD and schizophrenia. The respondent, a local area agency that provides DD services, reviewed the application and concluded that the petitioner was ineligible for DD services and denied his application, reasoning that he did not demonstrate that he had a qualifying DD pursuant to RSA 171-A:2, V. In April 2020, the petitioner appealed this decision to the AAU.

Between June 2020 and May 2021, the AAU held six hearings to determine whether the merits hearing could be held remotely, either

---

[1] In its briefing order, this court asked the parties to address three questions, including: (1) whether the superior court found by clear and convincing evidence that the petitioner would "no longer create a substantial risk of bodily injury to himself or another person or serious damage to property of another" if "conditionally discharged under conditions the court finds appropriate," RSA 651:11-a, IV (2016); (2) if the superior court had not made a finding described in (1), whether the AAU had jurisdiction to decide petitioner's appeal; and (3) if the superior court had not made a finding described in (1), whether the petitioner's eligibility for DD services is ripe for adjudication. The parties either agree, or do not dispute, that, when the AAU considered the petitioner's appeal, the superior court had not made a finding with respect to the first question. In fact, in its final decision, the AAU observed that the petitioner had not sought a conditional discharge. We conclude that the AAU had jurisdiction to hear the appeal and that the case is ripe for this court's review. Accordingly, we do not address these issues in the body of this opinion.

telephonically or by video conference, or in person. At that time, the AAU was scheduling only telephonic hearings, rather than in-person hearings, due to measures imposed to address the COVID-19 pandemic. Both parties agreed, however, that a telephonic hearing was not feasible given the nature of the case and the petitioner's disabilities. Despite the petitioner's numerous requests, the AAU repeatedly declined to hold a video conference hearing.

An in-person hearing on the merits was eventually scheduled for June 2021, after COVID-19 vaccines became available. The hearing took place over three days in June and August and included numerous witnesses and hundreds of pages of exhibits. Throughout the hearing, the parties focused their arguments upon conflicting reports prepared by medical professionals as to whether the petitioner had ASD. The petitioner relied upon the numerous medical providers who, over the last seventeen years, had diagnosed him with ASD. The petitioner also introduced the testimony of two of his treatment providers at NHH, who corroborated symptoms consistent with his prior ASD diagnoses. For its part, the respondent introduced the testimony of Dr. Trudel, a clinical neuropsychologist and licensed psychologist, who rebutted the basis for the petitioner's prior ASD diagnoses and instead opined that the petitioner suffered from schizophrenia. The respondent also elicited testimony from a consultant with experience assisting New Hampshire agencies that provide services to high-risk individuals with intellectual and developmental disabilities.

The AAU issued a decision in December 2021 upholding the respondent's determination. The AAU found that the petitioner did not establish by a preponderance of the evidence that he had a qualifying DD, and, accordingly, he did not demonstrate his eligibility to receive RSA chapter 171-A services. The AAU "gave great weight" to the testimony and opinion of Dr. Trudel who, the AAU found, "is well credentialed" and "presented as knowledgeable, candid, and thorough." The AAU gave "[l]ess weight" to the findings of a psychiatrist, who, in 2009, was the first person to diagnose the petitioner with Asperger's syndrome, a form of autism. The AAU reasoned that in reaching his opinion, the psychiatrist did not conduct any standardized testing, his report contained concerning internal inconsistencies, and the petitioner probably would not have met the diagnostic criteria for Asperger's. The AAU explained that for these reasons, "in this case, [it] cannot wholeheartedly accept the doctor's Asperger's diagnosis as being supported by the other evidence in the record." (Emphasis omitted.)

The AAU also declined to credit several subsequent reports and evaluations that concurred with the petitioner's autism diagnosis. The AAU recognized that certain symptoms of schizophrenia may replicate symptoms of ASD and found that the petitioner's ASD diagnoses were based on the observation of such symptoms. The AAU also accepted the respondent's

"bootstrapping" theory that once the psychiatrist diagnosed the petitioner with Asperger's in 2009, subsequent providers and evaluators accepted that diagnosis as correct. The petitioner moved to reconsider, which the AAU denied. This petition for writ of certiorari followed.

## II. Analysis

Judicial review of an AAU decision is available only by way of a petition for writ of certiorari. Petition of Sawyer, 170 N.H. 197, 202 (2017). Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court. Id. We exercise our power to grant such writs sparingly and only when to do otherwise would result in substantial injustice. Id. Our review of an AAU decision on a petition for writ of certiorari entails examining whether the AAU acted illegally with respect to jurisdiction, authority or observance of the law or unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously. Id.

### A. RSA Chapter 171-A Eligibility

We begin by addressing the substance of the parties' arguments concerning the interplay between NGRI acquittees subject to court supervision under RSA 651:11-a (2016) and individuals eligible for services under the DD system set forth in RSA chapters 171-A and 171-B (2022). Whether the petitioner is eligible for DD services requires an analysis of the relationship between two statutory schemes: one that governs orders of committal, see RSA ch. 651 (2016), and one that governs the DD system, see RSA chs. 171-A & 171-B.

RSA chapter 651 governs orders of committal. A court's order of committal for an NGRI acquittee is valid for five years. RSA 651:11-a, I. To renew an order of committal, a judicial hearing must be held, and "when the court is satisfied by clear and convincing evidence that the person suffers from a mental disorder and that it would be dangerous for him to go at large, the court shall renew the order of committal." Id. Even if the court renews the order of committal, it may order a conditional discharge if it "finds by clear and convincing evidence that the person's release under certain conditions . . . would no longer create a substantial risk of bodily injury to himself or another person or serious damage to property of another." RSA 651:11-a, IV(a). The court may order a conditional discharge:

> [U]nder conditions the court finds appropriate, including any prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, which has been certified to the court as appropriate by the commissioner of the department of corrections or his

4

designee or by the director of another facility not within the department of corrections in which he is committed, and which has been found by the court to be appropriate . . . .

RSA 651:11-a, IV(a)(1).

In turn, RSA chapter 171-A is designed to "maintain, implement and coordinate a comprehensive service delivery system for developmentally disabled persons." RSA 171-A:1; see also Petition of Sawyer, 170 N.H. at 198-99. This system is based upon the policy that "persons with developmental disabilities and their families be provided services that emphasize community living and programs to support individuals and families." RSA 171-A:1. Participation is voluntary, unless the individual is involuntarily admitted pursuant to RSA chapter 171-B — a pathway only available for persons deemed not competent to stand trial. RSA 171-A:5; RSA 171-B:2. Persons voluntarily participating in the system may, at any time, "seek a change in services or withdraw entirely from the service delivery system." RSA 171-A:7; see also N.H. Admin. R., He-M 310.06. To receive voluntary developmental services, an individual must apply through the area agency serving his or her region. RSA 171-A:6, I; N.H. Admin. R., He-M 503.04(b).

The petitioner contends that an NGRI acquittee subject to court supervision is also eligible to receive DD services pursuant to RSA chapter 171-A. He observes that neither RSA chapter 171-A nor RSA 651:11-a expressly excludes persons adjudicated NGRI from the definition of DD or from receiving DD services. In contrast, the respondent and the amicus curiae contend that NGRI acquittees may not receive DD services until they are unconditionally discharged. In other words, they argue that an NGRI acquittee cannot apply for voluntary DD services "for the purported purpose of having the Superior Court commit [the acquittee], via conditional discharge order, to the voluntary developmental services system under RSA 171-A." They reason that because the developmental services program is voluntary, "the area agency system has no legal authority to require clients to comply with treatment and/or security considerations." They also argue that the petitioner has no pathway to access involuntary developmental services under RSA chapter 171-B because it is expressly reserved for individuals found incompetent to stand trial. See RSA 171-A:5; RSA 171-B:2.

The parties' dispute demonstrates that the statutory scheme is unclear as to whether an NGRI acquittee subject to court supervision under RSA 651:11-a can access the developmental services system. On the one hand, the policy behind the developmental services system appears to support providing services and programs for any person with a developmental disability, regardless of their NGRI status. See RSA 171-A:1; see also N.H. Admin. R., He-

M 503.03(a) ("[A]ny person whose state of residence is New Hampshire and who has a developmental disability shall be eligible for services."). Moreover, neither RSA chapter 651 nor RSA chapter 171-A expressly excludes NGRI acquittees from utilizing DD services. Although an individual seeking access into the developmental services system must apply voluntarily, see RSA 171-A:5, I, this requirement, on its face, does not necessarily foreclose an NGRI acquittee from voluntarily seeking services.

On the other hand, the voluntary nature of the developmental services system also means that, except for those admitted involuntarily pursuant to RSA chapter 171-B, the participant may opt to change or terminate services at any time, and the area agency lacks enforcement authority to mandate compliance. RSA 171-A:7; see also N.H. Admin. R., He-M 310.06. Therein lies the dilemma. For example, if a court orders an NGRI acquittee, as a condition of the acquittee's conditional discharge, see RSA 651:11-a, IV(a), to participate in the developmental services system through RSA chapter 171-A, and the individual refuses to comply with treatment, the area agency cannot enforce the acquittee's compliance. It is worth noting, however, that the court may take action if the individual "fail[s] to comply with the conditions imposed by the court." RSA 651:11-a, IV(c). Moreover, when an NGRI acquittee applies voluntarily to receive DD services, his or her participation may not be entirely voluntary if the court ordered it as a condition of the acquittee's conditional discharge. The fact that the statute includes a pathway for involuntary participation — but such pathway is limited to persons deemed not competent to stand trial — implies that the legislature already considered who can participate involuntarily in the developmental services system and opted to exclude NGRI acquittees. See RSA 171-B:2. Although these observations do not factor into our analysis in this particular case, the legislature may wish to consider this apparent gap in the statutory scheme and address whether a court may order an NGRI acquittee's participation in the developmental services system as part of the acquittee's conditional discharge.

Even if we assume that persons with NGRI status are eligible for services pursuant to RSA chapter 171-A, there is no dispute that such individuals must have a qualifying DD to receive such services. See RSA 171-A:5, I; N.H. Admin. R., He-M 503.03(a); see also RSA 171-A:2, V (defining "[d]evelopmental disability"). The petitioner argues that the AAU's finding that he does not have a qualifying DD pursuant to RSA 171-A:2, V is an "unsustainable exercise of discretion" because "the overwhelming weight of the evidence . . . demonstrated that [he] established that he had a DD." (Emphasis omitted.) Specifically, the petitioner argues that: (1) the testimony of the petitioner's two treatment providers at NHH are due substantial weight; (2) numerous reports and evaluations presented to the AAU support the opinions of the petitioners' two treatment providers that he has ASD; and (3) the AAU's decision does not rest

6

on objective or credible evidence.  Given that the petitioner argues that this standard applies to our review of his challenge, we will assume, for purposes of this opinion, that the unsustainable exercise of discretion standard applies.

The petitioner has the burden of proving to the AAU, by a preponderance of the evidence, that he has a qualifying DD pursuant to RSA 171-A:2, V.  See N.H. Admin R., He-C 203.14(h).  A qualifying DD includes "a disability . . . [w]hich is attributable to" autism, but not schizophrenia.  RSA 171-A:2, V.  A preponderance of the evidence "means there is sufficient evidence to prove that a fact or conclusion is not only possible, but also probable."  N.H. Admin R., He-C 203.14(a)(2).  The "trier of fact is in the best position to measure the persuasiveness and credibility of evidence and is not compelled to believe even uncontroverted evidence."  DeLucca v. DeLucca, 152 N.H. 100, 102 (2005) (quotation omitted).  Moreover, "a trier of fact is free to accept or reject an expert's testimony, in whole or in part," and "it is not our task to determine whether we would have credited one expert over another, or to reweigh the evidence, but rather to determine whether its findings are supported by competent evidence in the record."  Appeal of Allen, 170 N.H. 754, 762 (2018) (quotation omitted).

We first address the petitioner's argument that the AAU erred in not granting substantial weight to the evidence submitted by the petitioner's two NHH treatment providers.  For support, the petitioner cites Appeal of Kehoe for the proposition that, "[b]ecause a claimant's treating physicians have great familiarity with [the claimant's] condition, their reports must be accorded substantial weight."  Appeal of Kehoe, 141 N.H. 412, 417 (1996) (quotation omitted).  Kehoe, however, is inapposite to the case at hand.  In Kehoe, we reversed the New Hampshire Compensation Appeals Board's (CAB) denial of a claimant's workers' compensation benefits.  Id. at 414.  We explained that the CAB found that the uncontroverted medical opinions from the claimant's providers were "largely conjectural," but did not cite any medical evidence to support this conclusion.  Id. at 418-19.  Instead, the CAB relied on its own lay opinion as to the reliability of the evidence presented by the claimant.  Id.  Here, however, the respondent provided, and the AAU considered, credible evidence from multiple medical experts challenging the petitioner's ASD diagnoses.  Thus, the AAU did not base its determination "solely upon its own lay opinion."  Id. at 419 (quotation omitted).

Next, the petitioner argues that the AAU erred because his prior ASD diagnoses were supported by numerous other evaluations and reports.  Although the AAU considered this evidence, it nevertheless decided to "grant great weight" to Dr. Trudel's testimony and less weight to the opinions of the other experts.  This court does not reweigh the evidence on appeal but, rather, determines whether factual findings are supported by competent evidence in the record.  See Appeal of Allen, 170 N.H. at 762; see also In re R.M., 172 N.H.

694, 698 (2019) (explaining that on appeal, we defer to the fact finder to resolve conflicts in testimony, measure the credibility of witnesses, and determine the weight to be given to testimony).

Here, we conclude that there is competent evidence in the record to support the AAU's determination to accord greater weight to the evidence rebutting the petitioner's prior ASD diagnoses. Contrary to the petitioner's assertions, several other medical professionals agree with Dr. Trudel's conclusion that the petitioner has schizophrenia rather than ASD. There is also evidence in the record supporting Dr. Trudel's "bootstrapping" theory, which the AAU accepted as a competent basis for concluding that the petitioner's ASD diagnoses were incorrect.

Multiple medical professionals recognized that the petitioner's symptoms are indicative of both ASD and schizophrenia, and several concluded that, in the petitioner's case, such symptoms indicate schizophrenia, or other diagnoses, rather than ASD. It was within the AAU's discretion to credit these opinions over those of other professionals who believe such symptoms are indicative of ASD. See Blagbrough Family Realty Trust v. A & T Forest Prods., 155 N.H. 29, 38 (2007) ("The resolution of conflicts in the evidence and determination of issues of fact are functions of the trier of fact." (quotation omitted)). Additionally, the AAU found that evidence indicating that the petitioner engages in repetitive motor movements and has an inflexible adherence to routine was insufficient to support the factual findings proposed by the petitioner. In reviewing the record, we agree with the AAU that this evidence is "not notable."

The petitioner also argues that the AAU's denial of several requested factual findings — specifically diagnoses and evaluation results demonstrating that he has ASD — is contrary to the evidence. In his view, "[s]uch blatant denial of facts in evidence further shows the unreasonableness of the AAU's decision." We do not construe the AAU's decision as rejecting the petitioner's prior diagnoses, but, rather, as part of its ultimate determination, previously detailed, not to credit the prior diagnoses as proof that the petitioner has a qualifying disability. See Guy v. Town of Temple, 157 N.H. 642, 649 (2008) ("[T]he interpretation of a tribunal's order presents a question of law, which we review de novo.").

The petitioner next argues that the AAU's decision does not rest on objective and credible evidence. The petitioner contends that the AAU erred by relying on four specific pieces of evidence: (1) Dr. Trudel's testimony; (2) an eligibility recommendation by Dr. Kenney regarding the petitioner's application to the area agency; (3) a functional assessment conducted by an employee of the area agency; and (4) a psychiatric evaluation of the petitioner. The petitioner takes issue with this evidence because Dr. Trudel never met or tested him, Dr. Kenney neither met nor tested the petitioner and did not testify, and

the agency employee and psychiatric evaluator also did not testify.  The petitioner asserts that some of their opinions were inconsistent with the positions of other medical professionals, and a number of these individuals worked for the respondent.  We are unpersuaded.

AAU administrative proceedings are governed by RSA chapter 541-A (2021) and the New Hampshire Code of Administrative Rules.  See RSA 541-A:16, :30-a to :36 (setting forth rules for adjudicatory proceedings); N.H. Admin. R., He-C 201.01, 201.02(a).  The rules of evidence do not apply in AAU administrative proceedings.  RSA 541-A:33, II.  Rather, the AAU may receive and consider any oral or documentary evidence, although the presiding officer shall, as necessary, exclude irrelevant, immaterial or unduly repetitious evidence.  Id.; see N.H. Admin. R., He-C 201.05(c)(4).  Moreover, as stated previously, the AAU "is in the best position to measure the persuasiveness and credibility of evidence," DeLucca, 152 N.H. at 102 (quotation omitted), and "it is not our task to determine whether we would have credited one expert over another," Appeal of Allen, 170 N.H. at 762.  Here, the petitioner is asking us to do just that.  The AAU considered all of the evidence presented and was apprised of the alleged deficiencies that the petitioner raises.  The AAU found Dr. Trudel to be "well credentialed" and "knowledgeable, candid, and thorough," and her testimony "to be credible and more plausible than that of others."  The AAU also found the evidence that the respondent presented, including the eligibility recommendation and the functional assessment, to be "reliable."  Accordingly, we find no reversible error.

B. Admissibility of Witness Testimony

Next, the petitioner argues that the AAU erred in admitting testimony from one of the respondent's witnesses and considering the petitioner's NGRI status when determining his eligibility to receive DD services under RSA chapter 171-A.  The respondent counters that the contested testimony "was not consequential," explaining that "[n]ot only did the hearing officer not rely on [the witness's] testimony in her decision, she never even cites his testimony in her Final Decision or Ruling on [the petitioner's] Motion for Reconsideration."  We agree with the respondent.

The witness is a consultant who has experience assisting area agencies in New Hampshire with providing services to "high-risk" individuals with intellectual and developmental disabilities, including those deemed incompetent to stand trial and involuntarily committed under RSA chapter 171-B.  He testified that he believes that a person with NGRI status committed under RSA 651:11-a should not, and indeed cannot, receive DD services until the court determines that the person is not dangerous and has ordered the individual conditionally or unconditionally released.

The AAU never considered whether, as a matter of law, someone with NGRI status committed under RSA 651:11-a is eligible to receive DD services. Rather, the AAU only mentioned the petitioner's NGRI status and involuntary committal under RSA chapter 651 in its final order to provide factual context. Accordingly, the petitioner's NGRI status did not constitute a basis for the AAU's decision that he is ineligible for DD services. We conclude that the contested testimony was immaterial to the AAU's determination and did not prejudice the petitioner. See Appeal of Nationwide Ins. Co., 120 N.H. at 94-95 (1980) ("The doctrine that error must be prejudicial to be reversible applies to decisions of an administrative agency."); cf. Slattery v. Norwood Realty, 145 N.H. 447, 450-51 (2000) ("The trial court's ruling did not rest upon the challenged testimony, and, after reviewing the record, we are satisfied that the plaintiff was not prejudiced by its admission."). Accordingly, we do not need to address the admissibility of this testimony.

C. Timeliness

Finally, we address the petitioner's argument that the AAU's failure to hold a timely hearing violated the federal Medicaid Act and his due process rights as protected by the Federal and New Hampshire Constitutions. Here, the petitioner experienced a near fifteen-month delay from when he first appealed to the AAU in April 2020 to the first day of his merits hearing in June 2021.

However, the onset of the COVID-19 pandemic and the protective measures imposed to mitigate the spread of the disease primarily, if not exclusively, created the delay. Between May 2020 and June 2021, the AAU held six hearings to assess whether to hold the merits hearing telephonically, via video conference, or in-person. From the outset, the AAU explained that, due to the pandemic, only remote, telephonic hearings were being held, and in-person hearings would not resume until a vaccine became available. Both parties, however, refused a telephonic hearing accommodation, claiming that it was not feasible due to the nature of the case and the petitioner's disabilities. On numerous occasions, counsel for the petitioner asked for a video conference hearing, but the AAU never granted the request, citing several concerns, including concerns about security, confidentiality, and bandwidth capabilities, associated with hearings held by way of video conference. Once COVID-19 vaccines became available, the AAU scheduled an in-person hearing.

The federal regulations under the Medicaid Act require an agency to "take final administrative action" within 90 days of an individual's request for an appeal. 42 C.F.R. § 431.244(f) (2021). The 90-day requirement may be exceeded in only two circumstances: (1) the appellant delays or fails to act; or (2) when there is an emergency beyond the agency's control. Id. Here, it is undisputed that the AAU failed to hold a hearing and issue a final order within the 90-day limit. Nevertheless, the outbreak of the COVID-19 pandemic

10

constituted an emergency, which, for the reasons we just discussed, caused the delay.  Based upon the plain language of the federal regulations, we conclude that in this case the AAU did not violate the Medicaid Act and, because the petitioner's remaining due process arguments are premised on this alleged violation, we decline to address them.

## III. Conclusion

For the foregoing reasons, we conclude that the AAU did not err in finding that the petitioner is ineligible for RSA chapter 171-A services based on the fact that he does not have a qualifying DD pursuant to RSA 171-A:2, V. Additionally, although we recognize the significant delay that the petitioner experienced waiting for the AAU merits hearing, we nevertheless conclude that the AAU did not violate the Medicaid Act.  Accordingly, we affirm.

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

11